FRED H. SMITH *vs.* NORTHERN PACIFIC RY. CO.

Opinion filed February 24th, 1894.

### Opinion of Witness—But Not His Belief Competent.

Upon a question of identity, where a witness is unable to speak positively, he may state his opinion based upon his own observations, but will not be permitted to give his belief resulting from certain extrinsic facts and circumstances, where such facts and circumstances are of a character which can be intelligently considered by the jury. In such cases the witness should state the facts and circumstances which furnish the grounds of his belief, and leave the inference to be drawn by the jury.

### Unresponsive Answers Stricken Out.

Where a witness gives unresponsive answers to questions, and thereby thrusts improper testimony before the jury, such answers should be stricken out, and, if such answers are prejudicial to a suitor, it is reversible error to refuse to strike them out if a timely motion is made for that purpose.

### Fires—Identity of Engine—Belief of Witness.

Where the identity of an engine drawing a certain train of cars was a material question for the jury, a witness (who was about a half mile distant from the train when it passed) was asked, "State if you know, the number of the engine drawing the train," and answered, I believe it was number 44." On cross-examination he was asked, "What was the number of the engine?" and answered, "I believe it was number 44." He was then asked. "Do you know that this was engine number 44?" and answered, "It is my honest belief that it was engine 44. It was her day to run. Her engineer was on it, and the railroad dispatcher would not deny it." A motion was promptly interposed to strike out said answers of the witness. The answers were not responsive, as they gave only the belief of the witness resulting from a course of reasoning deduced from facts and circumstances as to which the jury was as well qualified to judge as the witness.

Appeal from District Court, La Moure County; *Rose*, J.

Action by Fred H. Smith against the Northern Pacific Railroad Company to recover damages from fire set by defendant's locomotive. There was judgment for plaintiff, and defendant appeals. Reversed.

*Ball & Watson*, for appellant.

*S. L. Glaspell*, for respondent.

WALLIN J. This action is brought to recover damages done to plaintiff's property by a fire alleged to have been negligently

started by the defendants. The complaint alleges, and the undisputed testimony shows, that the damaging fire occurred on the 6th day of April, 1889. It is undisputed that the fire started in dry grass at a point outside the defendant's right of way, and about 118 feet distant from the railroad tracks, and that from the point of ignition the fire spread to plaintiff's premises, and there destroyed the property of the plaintiff. The fact is clearly shown and not disputed, that the fire in question sprang up immediately, or within a few moments after one of the defendant's passenger trains going west had passed a point adjacent to where the fire originated, and that such train passed that point about 12 o'clock noon on the 6th day of April, 1889. It is conceded that, if defendant's train started the fire at all, it did so by throwing out fire or sparks from the passenger train in question. When the plaintiff rested his case, the train which set out the fire had been clearly identified, but at that time no testimony had been offered tending to establish the identity of the engine which drew the train, by its number or otherwise, unless the evidence of one Reese, who testified in plaintiff's behalf, tended to identify such engine as engine No. 44. As we have determined that the evidence of Reese furnishes the data upon which our decision must turn, we will reproduce its material features, as given at the trial. Reese lived in the vicinity, and, after testifying that he saw the fire about 15 minutes after it started, and that he saw the train pass the point about noon, he was asked as follows: "Q. State, if you know, the number of the engine drawing the train which you say went through a few minutes before the fire started. A. I believe it was number 44. Q. State, if you know, the name of the engineer on the train. A. Knowles. Q. Do you know whether or not this engine 44, run by this engineer, Knowles, started other fires on or about the 6th of April, 1889? A. I know positively. Q. State all you know of this. A. About the 9th or 10th of March, 1889, it started a fire near my place, within two rods of culvert 131. It started another one on what we call 'McNay's Crossing.' That was a few rods east of where it started

this fire of Fred H. Smith. That fire was on the north side of the track, and this fire of culvert 131 was on the north side. There was a fire about every week. Q. State fully about these other fires that were caused by engine 44." The witness stated that he was present at all the other fires testified to, and that he stayed right at home, because he was afraid to go away on account of the destructive work of engine 44. "Q. In the case of each of these fires, had engine 44 gone through just before the fire started? A. Yes; in each case. I saw the fires start as the engine went by." Cross-examination: "Q. How far were you from the fire when you first saw it. A. About half a mile. Q. What was the number of this engine? A. I believe it was number 44. Q. Do you know that this was engine 44? A. It was my honest belief that it was engine 44. It was her day to run. Her engineer was on it, and the railroad dispatcher would not deny it. Q. You know it was engine number 44 that started these other fires you testified to? A. Yes." The evidence of Reese, above quoted, was admitted against the repeated objections of defendant's counsel, made upon the grounds that it was incompetent, irrelevant, and immaterial; and counsel also moved promptly to strike out the answers made by Reese upon the same grounds. The court allowed the testimony to stand, and, to the several rulings, the defendant saved an exception. These several rulings, are assigned as error in this court, and the question is presented whether the testimony was admissable or inadmissable at the time it was offered, and, if not admissible, whether it was prejudicial.

Upon the defense it was shown by clear, undisputed evidence that the engine which drew the train that set out the fire, if it was set out by any train, was engine No. 60. It further clearly appeared from the undisputed testimony that engine No. 60 was fully equipped with the best modern appliances for arresting sparks and preventing the escape of sparks and fire from the engine; and it also appeared, by evidence not controverted, that the fireman and engineer who were running the engine at the time were men of skill and experience, and that the engine was

handled with due care when it passed the locality of the fire.   As to the number of the engine which drew the train in question: George W. Knowles, the engineer upon the train testified:   "I have had my attention called to the location of the fire, and it is about two miles west from Verona.   On April 6th I left Verona, going west, about noon.  I had engine number 60.  I know engine number 44.   Engine 44 on that day was in the shop.  I was running  44 when  she was not in the  shop, on my regular run.   She was my regular engine.   There were two engines  on that run.   I was running one of them, and George Truman was running the other.   Engine number 60 was the the regular engine of George Truman.   There were two engineers on that run, myself and George Truman, and there were two regular engines, 44 and 60. Mine was engine 44, and Truman's was engine 60.  Engine 44 was in the shop at this time for the purpose of having her flues fixed." Richard Beggs testified that he was then an engineer, but was a fireman at the time in question.   He testified: "I was with engineer Knowles on April 6th, 1889, firing his engine.  The engine we had that day was No. 60.   George Truman was my engineer.   Engine number 60 was my regular engine."   Beggs was called at a later stage of the trial, and testified as follows: "Q.  You have testified to going over the road of the Fargo & Southwestern on the 6th of April, 1889, on engine 60, with Mr. Knowles.   Did you ever make more than one trip on that engine with Mr. Knowles in that month?   A.  No, sir."   Knowles was recalled, and testified:  "Q.  You have testified as to having gone over the Fargo & Southwestern road on engine 60 on the 6th day of April, 1889, with fireman Beggs.   I will ask you if that was the only trip you ever made with engine 60 with firemen Beggs.   A. To my knowledge, it was.   Q.  Are you sure it was the only one you ever made with him, or that engine, in the month of April, 1889.   A.  Yes, sir."   J. M. Quinlan testified:  "I reside at Fargo. My business is foreman boilermaker of the Northern Pacific shops at Fargo.   I made the boiler repairs on engine 44.   They were made in the latter part of March or the beginning of April.   I

think she came out of the shop during the month of April, but what time I could not tell you without looking at the books. It could not have been as early as the 6th of April that she came out. She was still undergoing repairs on that day." S. L. Bean testified: "I am the division master mechanic for the defendant. Have held that position since June 15, 1887. My duties as master mechanic are to supervise engineers of the machinery department, and occasionally make inspection to know that there duties are being attended to. Engine 44 had an old style stack until the latter part of March, 1889, when she went into the shops, and stayed there until the latter part of April, being there from three weeks to a month. She was certainly there until after the middle of April. She was being changed and made into an extension front and straight stack. There had been complaints, prior to this, of engine 44 starting fires, and we took her in the shops, and put on the extension front. No. 60 had not been, prior to April 6th, engineer Knowles' engine. He may have run her now and then a trip. The Smith fire was reported to me as having been set in the neighborhood of Verona station. As soon as this was done, I had the record looked up, and special inspection made, to make sure there had been nothing overlooked in previous inspections,—I mean as to engine number 60. Our records show that engine number 60 made the run drawing the passenger train from Fargo to Edgerly and return on April 6, 1889. The different records which are kept are the engineer's time book, the mileage book, roundhouse register, and this stack inspection register. It is impossible to keep track of the coming and going in such quantity and numbers as the defendant has without keeping a record under this system which I have described. With these four records, there is no possibility of a mistake being made, and engine number 60 being reported as going over the road on a given day, when some other engine went. And, besides these records, we have the original trip slip, and they are filed. That makes five records which we have on the point. The trip slips and the books have to correspond. It would be engineer Knowles who

would file it if he had made the run that day, and he would receive pay for that day's work on the mileage basis. I examined all these records personally after my attention had been called to the fire. I looked over the records. All of these records showed that it was engine number 60 which ran over the road." At the close of the case, defendant moved in the trial court to strike out the evidence of Reese, as above set out, upon the grounds stated, when defendant's counsel moved to strike it out originally. This motion was denied, and the evidence was permitted to be considered by the jury. Defendant excepted to this ruling, and it is assigned as error here.

We think the original ruling was prejudicial error. By refusing to strike out the testimony of Reese, the court in effect, submitted his testimony to the jury, and allowed the jury to consider it with the other evidence offered by the plaintiff in support of the allegations of the complaint. Reese testified that he believed that engine 44 drew the offending train, and also gave testimony tending strongly to show that engine No. 44 had on other days, and about the time in question, scattered fire frequently, and had repeatedly, on other occasions about that time, and in the same neighborhood, started fires which had spread in various directions, and done damage to other parties. From this evidence the jury were permitted to consider whether No. 44 drew the offending train. Reese testified that he honestly believed that it did; and, if it did, they were then permitted to consider what Reese had stated in his testimony as to the habits of 44 with reference to throwing out fire in the neighborhood. When the testimony of Reese was offered, it was objected to, and the attention of the trial court was called specifically to the different features of his testimony by the following motions seasonably made by defendant's counsel to strike it out: "Thereupon the defendant moved the court to strike out the answers to every question and cross question propounded to the witness Reese, and which was objected to, and heretofore ruled upon by the court." "The defendant then moved to strike out all the testimony of the

witness Reese, so far as the same relates to engine 44, and the alleged destructive work done by her, and the alleged setting out of the fire by her." Reese does not state that when the offending train passed, going west, he then and there recognized the engine by her number or otherwise; on the contrary, his testimony excludes the hypothesis that he did recognize the train by anything he saw 'or heard at the time. When asked on cross-examination, "Do you know that this was engine No. 44?" He answered: "It is my honest belief that it was engine 44. Her engineer was on it, and the railroad dispatcher would not deny it." The answer discloses clearly that the witness rested his belief upon the facts and circumstances alluded to, and that his belief was a conclusion deduced by a course of reasoning from the facts which he stated. But in this an elementary rule of evidence was violated. It was the province of the jury to draw conclusions from the facts stated by the witness. Whether the engine which drew the train was numbered 44 was a question of fact for the jury, and they were as competent to draw a conclusion from the facts stated by the witness as he was. It is true that a nonexpert witness may, on questions of identity, give his opinion or impressions, if based upon his own observations; but no nonexpert witness is allowed to state his opinion, or the deductions of his own mind, based upon facts which the jury can consider and determine as well as the witness. Notes on pp. 234 and 235, 3 Abb. N. C., (*People* v. *New York Hospital*;) 1 Greenl. Ev. § 440; *Hathaway* v. *Brown*, 22 Minn. 214; *Williams* v. *Clark*, (Minn.) 49 N. W. 398. On his direct examination, Reese was asked, against objection, as follows: "State, if you know, the number of the engine drawing the train." His answer was: "I believe it was number 44." On cross-examination the witness was asked: "Do you know that this was engine number 44?" He answered: "It is my honest belief that it was engine 44," etc. The questions called for the knowledge of the witness, if he had knowledge. The answers were unresponsive, and were not suggested by the

question. The witness saw fit to give his belief, and did not respond as to his knowledge. His belief, not based upon his observations made at the time the train passed, was inadmissable. The questions were proper, but the answers were improper, because they were unresponsive to the question, and wholly incompetent as evidence. When a witness answers unresponsively, and gives testimony not suggested by a proper question, and the testimony is inadmissable, the proper course is to move the court to strike out the unresponsive answers. This motion was made, and the court refused to strike out the testimony. This ruling was error, and, for reasons already stated, was highly prejudicial to the defendant. For this error, the judgment will be reversed, and a new trial granted. See 1 Thomp. Trials, § 718. The evidence sought to be striken out by the motion was, in its essential nature, incompetent. The grounds of objection to the testimony could not have been obviated if such grounds had been stated or reiterated in the motion to strike out. *Turner* v. *City of Newburgh*, (N. Y. App.) 16 N. E. 344; *Bergmann* v. *Jones*, 94 N. Y. 51; *People* v. *Beach*, 87 N. Y. 508. All concur.

BARTHOLOMEW, C. J., having been of counsel, took no part in the above decision; *Templeton*, J., of the First Judicial District, sitting in his place by request.