(117 N. W. 866.)

---

THE STATE OF NORTH DAKOTA v. WILLIAM H. DENNY.

Opinion filed October 10, 1908.

**Criminal Law — Instruction — Felonious Intent.**

1. An instruction defining the term "feloniously" as "an intent to commit a felony or an intent to commit a wrongful act which might result in the commission of a felony," etc., is erroneous. By the use of the word "might" the jury was told, in effect, that a person is by law presumed to intend all the possible, rather than the reasonably probable, consequences of his voluntarily wrongful act. Said definition was also erroneous as it in effect informed the jury that an intent to commit a wrongful act which might result in receiving stolen property, knowing the same to be stolen, constituted a felonious intent within the meaning of the law relating to the offense charged in the information, to wit, receiving stolen property knowing the same to have been stolen.

**Same — Error Without Prejudice.**

2. Said instruction, although erroneous, was not prejudicial in view of the subsequent explicit instructions given by the trial judge which are referred to at length in the opinion.

**Same — Receiving Stolen Property — Evidence.**

3. In a prosecution for receiving stolen property knowing the same to have been stolen, it is unnecessary to allege or prove who

the thief was. It is accordingly *held* that an instruction to the effect that it is immaterial who committed the larceny, was not prejudicial, in view of state of the proof, which in no manner tended to implicate the defendant in such larceny.

### Same — Guilty Knowledge.

4. An instruction that "guilty knowledge is made out and sufficiently proven to warrant conviction in that respect by proof that the defendant received the property under such circumstances as would satisfy a man of ordinary intelligence and caution that they were stolen" is erroneous. Such instruction lays down an arbitrary rule for determining guilty knowledge using as a test facts which would satisfy a man of ordinary intelligence and caution. The standard by which to impute guilty knowledge is not that of a man of ordinary intelligence and caution, but the test is a personal test of the defendant. Under such instruction, no discretion was vested in the jury and hence the same constituted an invasion of the province of the jury. Spalding J., dissenting.

### Same.

5. Among other things, the jury was instructed as follows: "This felonious intent, to warrant conviction, must have consisted of his intentional receipt of said stolen property, knowing the same to be stolen, with further intent in defendant in receiving the same to deprive the owner of said property, or to derive gain, profit or consideration himself from receiving or concealing said property or the disposal thereof." Said instruction was proper, as a person may be convicted, even though he received the stolen property for the purpose of returning it to the owner, if his purpose was also to receive a reward therefor.

### Criminal Law — Witness — Impeachment — Cross-Examination.

6. On cross-examination of one of the state's witnesses, and for the purpose of impeachment, he was asked whether as a matter of fact he was running a certain saloon in violation of law and without a license. To this question counsel for the state objected, and the objection was sustained. *Held* error. Such question was admissible under the general rule that for the purpose of impeachment a witness may be asked questions as to collateral matters, the answers to which may tend to degrade or otherwise discredit him.

### Evidence.

7. The state was permitted over defendant's objection to give secondary evidence as to the contents of a certain copy of letter claimed to have been written by one Miller to defendant, and tending to show defendant's guilty knowledge in receiving the stolen property. *Held,* for reasons stated in the opinion, that such ruling constituted prejudicial error, for the reason that no sufficient foundation for the introduction of such testimony had been shown.

**Witness — Expert Testimony.**

8. The state's attorney, who was a witness for the state, was permitted to give his opinion or conclusion to the effect that the alleged copy of letter claimed to have been sent from Montana to defendant was on letter paper different from that in use by the Great Northern Hotel at Williston. He was a non-expert witness, and his testimony should have been restricted to facts, leaving it to the jury to draw their own inferences or conclusions therefrom.

**Evidence.**

9. Certain other rulings in the admission of testimony examined, and *held* not error.

**Same — Motion to Advise Acquittal.**

10. Evidence examined, and *held* that the rulings of the trial court in denying defendant's motions to advise an acquittal and for a new trial, in so far as the ground of insufficiency of the evidence is concerned, were correct.

Appeal from District Court, Wiliams county; *Goss, J.*

William H. Denny was convicted of receiving stolen property, knowing the same to have been stolen, and from the judgment of conviction and an order denying a new trial, he appeals.

Reversed and remanded.

*Palda & Burke,* (*Engerud, Holt & Frame,* of counsel), for appellant.

Charge must cover substantive elements of the crime. State v. Fordham, 13 N. D. 502, 101 N. W. 888.

Felonious or wrongful intent essence of the crime. O'Connel v. State, 55 Ga. 191; Rice v. State, 50 Tenn. 215; Revised Codes 1905, section 9199.

Use of the word "might" causes the meaning of possible instead of probable consequences of defendant's acts. People v. Munn, 3 Pac. 650; People v. Rockwell, 39 Mich. 503; People v. Sweeney, 22 N. W. 50.

The identity of the thief, other than the defendant, is immaterial. Wharton Criminal Law, (9th Ed.) volume 1, section 986.

The standard to determine guilty knowledge is not ordinary intelligence and caution, but the test is a personal test of the defendant. State v. Hazlett, 16 N. D. 426, 113 N. W. 374.

Before the admission of the contents of a lost paper, all sources, of information, and means of discovery which the nature of the case suggests, must be exhausted. McManus v. Commow, 10 N. D. 340, 87 N. W. 8; Bogen v. McCutcheon, 48 Ala. 493; Calhoun v. Thompson, 56 Ala. 166; Watson v. State, 63 Ala. 19; Bolden v. State, 15 So. 341; O'Neill v. McKinna, 49 So. 105; Norris v. Russell, 5 Cal. 249; Taylor v. Clark, 49 Cal. 671; Wells v. Adams, 1 Pac. 698; Billen v. Henkle, 13 Pac. 420; Lott v. Buck, 39 S. E. 70; Post v. School District, 26 N. W. 911; Smith v. Axtel, 1 N. J. Eq. 494.

A witness must state facts, not his inferences therefrom. Smith v. N. P. Ry. Co., 3 N. D. 555, 58 N. W. 345; Musick v. Latrobe, 39 Atl. 226; Perry v. Graham, 18 Ala. 822; Largen v. Central Ry. Co., 40 Cal. 272.

*T. F. McCue* and *Van R. Brown,* for respondent.

The definition of "feloniously" as "with intent to commit a felony," was correct. State v. Jesse, 17 N. C. 297; State v. Snell, 78 Mo. 240; State v. Rechnitz, 52 Pac. 264; State v. Smith, 71 Pac. 767; People v. Dumar, 5 N. Y. Cr. Rep. 55; State v. Dustraw, 137 Mo. 44; State v. Douglas, 53 Kan. 70, 37 Pac. 172; U. S. v. Greve, 65 Fed. 489.

In a prosecution for receiving stolen property, name of the person stealing need not be alleged or proven. Commonwealth v. Hogan, 121 Mass. 373; Commonwealth v. King, 9 Cush. 284; People v. Caswell, 21 Wend. 86.

The evidence was sufficient to justify the verdict. Williams v. State, 21 N. W. 56; Palmer v. People, 4 Neb. 73; Hurley v. State, 6 Ohio, 400; State v. Crewes, 16 Mo. 391; State v. Elliott, 15 Iowa, 72; Wolf v. State, 11 Ind. 231; Guiles v. State, 6 Ga. 272.

FISK, J. The defendant, William H. Denny, was convicted in the district court of Williams county of the crime of receiving stolen property, knowing the same to have been stolen, and was sentenced to imprisonment in the penitentiary for the period of three years. He moved for a new trial upon the grounds, first, of misdirection of the jury, and errors of law occurring at the trial and excepted to by him; second, that the verdict is contrary to law and clearly against the evidence; and, third, that the information does not state facts sufficient to constitute a public offense, which motion was.

denied on July 29, 1907. From the judgment of conviction, and from the order denying the motion for a new trial, defendant appealed to this court, setting forth 17 assignments of error, which we will dispose of in the order presented in appellant's brief.

The first assignment is based upon the instruction of the court to the jury defining the word "feloniously." The instruction complained of is as follows: "The term 'feloniously' means, when applied to the intent with which an act was done, an intent to commit a felony, or an intent to commit a wrongful act, which might result in the commission of a felony; and under our statutes the crime of receiving stolen property, knowing the same to have been stolen, is a felony." We agree with appellant's counsel that the instruction is faulty. An essential ingredient of the crime is the felonious or wrongful intent in receiving the stolen property. By the use of the word "might" in defining the term "feloniously" the jury was told that a person is by law presumed to intend all the possible, rather than the reasonably probable, consequences of his voluntarily wrongful act. This we think was error. People v. Munn, 65 Cal. 211, 3 Pac. 650; People v. Rockwell, 39 Mich. 503. Said definition was also erroneous, as it in effect informed the jury that an intent to commit a wrongful act which might result in receiving stolen property, knowing the same to be stolen, constituted a felonious intent within the meaning of the law relating to the offense charged. As said by the Court of Appeals of New York in People v. Hartwell, 166 N. Y. 361, 59 N. E. 929: "A person may receive stolen property, knowing it to be stolen, for the purpose of returning it to the true owner, and not be guilty of any crime. It is only where the property is received, knowing it to have been stolen, with the criminal intent to deprive the owner of the property, that the receiver is punishable. * * * A person may receive property from another, and at the time of receiving it may intend to retain it and thus feloniously deprive the owner thereof, and still have no knowledge that the property had been stolen. By so retaining the property, he may become guilty of larceny, but he would not be guilty of the crime charged by the provisions of the code under consideration." Although the said instruction was erroneous for the reason above stated, still, when considered in connection with the entire charge to the jury, we are not prepared to hold that the same was prejudicial to the defendant. Later in the instructions the jury was distinctly told that, unless they

found from the evidence beyond a reasonable doubt that every material allegation of the information was true, they should acquit; and they were instructed that among the material allegations thereof were the following:

"(5) That the defendant, William H. Denny, did willfully, unlawfully, and feloniously and knowingly and for a consideration receive said stolen personal property.

"(6) That at the time said William H. Denny received into his possession said personal property he did so willfully, unlawfully, and feloniously, and knowing that said personal property had been feloniously stolen and received the same, with intent to deprive the owner thereof."

Still later in the charge the jury was instructed as follows: "In this connection also comes the question of the intentional receiving of said property, if the same was received by defendant, knowing the same to have been stolen, as the defendant must have intentionally received said property with guilty knowledge—that is, with knowledge that the same was stolen property—to be guilty of the charge contained in the information, that of receivng stolen property; knowing the same to have been stolen. The knowledge of the stolen character of the property must have been in the mind of the defendant at the time of the receiving of the same, if he did receive it; and, if the defendant received said property without knowledge that the same was stolen property, and after the reception thereof learned that the same was stolen, the defendant cannot be found guilty. And, in addition to the reception of said property with knowledge that the same was stolen, before the defendant can be found guilty you must find that he took said horses, or received them, with the intent to deprive the owner thereof." In view of these explicit instructions, we are unable to see how the defendant could have been prejudiced by the above definition of the term "feloniously."

Assignment No. 2 challenges the correctness of that portion of the instructions wherein the jury was told "that the person committing said larceny from the owner thereof is immaterial." Counsel argue that it is necessary that the person who commits the larceny should be some one other than the defendant or person receiving it, because, if the defendant had himself committed the larceny, he could not have been found guilty of the crime charged, as they are distinct. Granting the soundness of this contention, we are

unable to agree to the conclusions reached by counsel. It was unnecessary for the state to allege or prove who the thief was, and there was not even an intimation that defendant stole the property, and the presumption is that he did not. How then can it be claimed that the jury may have believed that defendant was an accomplice in the larceny? There was no foundation for such a belief; and hence there is no force in the contention that the jury might have understood from the instruction that they could convict defendant, even though they found that he committed the larceny or was an accomplice thereto.

The next assignment calls in question the following instruction: "Guilty knowledge is made out and sufficiently proven to warrant conviction in that respect by the proof that the defendant received the property under such circumstances as would satisfy a man of ordinary intelligence and caution that they were stolen." Immediately following the above is the further instruction: "The jury is further instructed that, if you find that all the facts and circumstances surrounding the receiving of the horses by the defendant were such as would reasonably satisfy and convince a man of defendant's age, intelligence, and business ability that the horses were stolen, then you may in your discretion find the defendant had knowledge that said property was stolen property."The criticism made on these instructions is that they are inconsistent, and the latter does not in any manner qualify the former. It will be seen that the first instruction lays down an arbitrary rule for determining guilty knowledge, using as a test facts which would satisfy a man of ordinary intelligence and caution, while the latter test is as to what would reasonably satisfy and convince a man of defendant's age, intelligence, and business ability that the horses were stolen. Under the latter instruction, the jury was told that they may in their discretion find guilty knowledge on the part of the defendant after applying the rule therein stated, while the former instruction leaves no such discretion, but they are told that guilty knowledge is made out and sufficiently proven to warrant conviction if the proof shows that defendant received the property under circumstances sufficient to satisfy a man of ordinary intelligence and caution that they were stolen. We think the first instruction was clearly erroneous and prejudicial. Appellant's counsel are correct in their contention that "the standard by which to impute guilty knowledge is not that of a man of ordinary intelligence and caution, but the test is a per-

sonal test of the defendant." This is in harmony with the principle announced by this court in State v. Hazlett, 16 N. D. 426, 113 N. W. 374. See, also, Robinson v. State, 84 Ind. 452. We think said instruction was clearly erroneous for the further reason that it invaded the province of the jury. As stated by the Indiana court in the above case, "guilty knowledge was purely a question of fact for the determination of the jury; and the court could not, as a matter of law, tell them what would be sufficient evidence of such guilty knowledge. The court had no right thus to invade the province of the jury." Upon the latter point, see, also, Collins v. State, 33 Ala. 434, 73 Am. Dec. 426. In Commonwealth v. Finn, 108 Mass. 466, cited by respondent's counsel, the instruction which was sustained differed from the one here challenged in that it did not invade the province of the jury.

Assignment No. 4 is predicated upon the giving of the following instruction: "This felonious intent to warrant conviction must have consisted of his intentional receipt of said stolen property, knowing the same to be stolen, with further intent in defendant in receiving the same to deprive the owner of said property, or to derive gain, profit, or consideration himself from receiving or concealing said property or the disposal thereof." The last clause is the portion criticised, but we are of the opinion that the criticism is not well taken. A person may be convicted even though he received the stolen property for the purpose of returning it to the owner, provided his purpose was also to secure a reward therefor. 1 Wharton, Cr. Law, section 991; 2 Bish. Cr. Law, section 1138; 24 Am. & Eng. Enc. of Law 47, and cases cited.

We have examined the instruction complained of in appellant's fifth assignment of error, and are agreed that the giving of the same was in no manner prejudicial to defendant; and we pass the same without further comment.

The sixth assignment of error calls in question the correctness of the trial court's ruling in permitting an answer to the following question asked the witness Mills, who is the owner of the horses stolen: "Q. Did he ever recover the horses for you? A. No, sir." Just previous to the asking of this question, Mills testified to a conversation with defendant about these horses, in which defendant admitted having received the same, and promised to do what he could to recover the horses for the witness, but stating that it would

take some time to do so. ,We think the ruling was error, but we are unable to see how the same was prejudicial.

The next assignment of error relates to the ruling of the trial court in excluding the answer to the following question asked the witness Miller on cross-examination: "Q. As a matter of fact, you were running that saloon in violation of law and without a license?" This question was asked for the purpose of impeaching the witness by proof of general bad character. We think the question was admissible under the general rule that, for the purpose of impeachment, a witness may be asked questions as to collateral matters, the answers to which may tend to degrade or otherwise discredit him. While such a cross-examination may be controlled within the limits of a sound discretion vested in the trial court, we think the ruling above complained of was an abuse of such discretion.

The next three assignments of error are discussed together in appellant's brief, and they relate to the rulings of the trial court in permitting the witness Miller to testify over defendant's objection as to the contents of a certain letter claimed to have been sent from Ashford, Mont., to defendant, and written by the witness at the dictation of one Tom Ryan. The grounds of these objections were that the testimony was incompetent, irrelevant, and immaterial, no foundation laid, and not the best evidence. The answer, which was permitted to be given, was very damaging to the defendant, as it tended directly to connect the defendant with the crime charged. Therefore the testimony was highly prejudicial, and, if these rulings were erroneous, they clearly constitute reversible error. The only evidence adduced by the state to show defendant's guilty knowledge in receiving these stolen horses is the testimony of the witness Miller that at the request of Ryan, the alleged thief, he dictated, addressed, and mailed to the defendant a certain letter dated July 29th, from the contents of which it might be presumed that the defendant knew that the horses which he received were stolen horses. Defendant denied the receipt of any such letter. Miller testified that, at the time he wrote the original, he made a copy which he afterwards exhibited to witnesses Mills and Hall, and which was offered in evidence at a certain preliminary examination on October 16, 1905, before one Leonhardy, a justice of the peace at Williston. The defense contended that the purported copy of letter introduced before said justice bore unmistakable evidence

on its face that it was written on stationery of the Great Northern Hotel at Williston, and that the top of the letterhead had been severed to conceal such fact, but that certain marks appearing at the top and to the right of the alleged copy matched exactly with the bottom of the letters appearing on the stationery of such hotel; the matching being so perfect that the character of the paper and the ruling and water mark conclusively showed that, instead of being made as Miller testified on his own note paper at Ashford, Mont., this copy was made on the Great Northern Hotel stationery, and presumably at Williston, where said hotel is located. The state contended that this letter was lost, although conceding that it was in the possession of counsel for the state on Friday preceding the trial. The state, before offering secondary evidence of the contents of the copy and for the purpose of laying a foundation therefor, placed State's Attorney Brown upon the stand, who testified that he saw the letter on Friday, examined it carefully to see if it was the same letter or a copy of the letter, stating that he received it from Miller through Mr. Purcell. He was not positive that he had the letter last, but he and Mr. Purcell examined it together. On cross-examination he testified: "I will be frank with you. I don't believe the letter is mislaid. I feel confident of that. * · * * I don't know when the paper was lost. The last time I used the letter was the night that we examined it carefully, and laid it to one side. * * * I don't think it was handed to Mr. Miller, but my best recollection is that it was between Mr. Purcell and me. I couldn't say who last had the letter, but it was between Mr. Purcell. I think the sheriff saw the letter there at the same time. The letter disappeared on Friday, and was not missed until Saturday. This was last Friday." Lampmann and George W. Hall were also examined with reference to the whereabouts of said copy, but there was no showing made that Purcell, who assisted the state's attorney in the prosecution of said case, did not have such copy in his possession. Miller testified as follows: "Q. What have you done with that copy? What has become of it? A. Mr. Purcell and Mr. Brown have got it, I guess. I gave it to them Friday morning." Purcell made the following statement not under oath: "I will say in this connection that I had the copy of the letter in the other trial. There was no preliminary examination had in this case, and I am the one that got the letter from the files, or rather picked it up here and took it and gave it to Mr. Miller last Decem-

ber, and he handed it over to Mr. Brown and myself the other evening, and I gave it to Mr. Brown there, and he last had it, and we have been looking for it down in his office; and Mr. Brown is the last one who had it, and he mislaid it and I expected to have Mr. Brown take the stand and prove that fact. He has mislaid it in some way. That is the explanation we make of it, and in his endeavor to have it put away for safe-keeping Mr. Brown has mislaid it with some of his papers, and we have been looking for it for some time." Without laying any further foundation, the state was permitted to show by the witnesses Miller, Mills, and Hall what the contents of this copy of letter were. We think this was reversible error. There was no proper showing made that Purcell did not have the copy in his possession, and we think it was incumbent upon the state to make such showing before offering secondary evidence. The correct rule regarding the laying of a foundation in order to render admissible secondary evidence as to the contents of a lost instrument may be found in the following cases: McMannus v. Commow, 10 N. D. 340, 87 N. W. 8; Bogen v. McCutchen, 48 Ala. 493; Calhoun v. Thompson, 56 Ala. 166, 28 Am. St. Rep. 754; O'Neal v. McKinna, 116 Ala. 606, 22 South. 905; King v. Randlett, 33 Cal. 318; Taylor v. Clark, 49 Cal. 671; Lott v. Buck, 113 Ga. 640, 39 S. E. 70; Post v. School District, 19 Neb. 135, 26 N. W. 911; Smith v. Axtel, 1 N. J. Eq. 494.

Assignments numbered 11, 12, 13, and 14 relate to rulings upon objections interposed to questions propounded to the witness Brown, and they require but brief notice. This witness, who was the state's attorney in charge of the prosecution of defendant, was permitted, over objection, to testify as to his opinion or conclusion regarding the identity of the paper on which the alleged copy of Miller's letter to defendant was written and the letter paper of the Great Northern Hotel. We think these rulings were erroneous. The witness had not been shown to possess expert knowledge upon the subject regarding which he testified, and therefore his testimony should have been restricted to facts, leaving it to the jury to draw their own inferences or conclusions therefrom. Smith v. N. P. Ry. Co., 3 N. D. 555, 58 N. W. 345; Williams v. Clark, 47 Minn. 53, 49 N. W. 398; 5 Encyc. of Ev. 675.

The next assignment of error challenges the correctness of the court's ruling in permitting the witness Stewart to testify relative to existing differences in certain papers examined by him during

the hearing before the justice; the particular objection being that the witness was not shown to have had any knowledge that the paper which he examined was the purported copy of letter which Miller wrote to defendant, and that there was no proof as a matter of fact that the paper which he examined was such purported copy. We think there is no merit to such contention in view of the testimony of the witness Brown to the effect that he called Stewart's attention to such purported copy.

The last two assignments of error are predicated upon the refusal of the trial court to advise a verdict of acquittal, and in denying defendant's motion for a new trial. In support of these assignments appellant's counsel contend: First, that the state has failed to show beyond a reasonable doubt that any property was stolen, and that it was stolen by some one other than the defendant. Second, there is no evidence which shows that the horses alleged to have been stolen are the identical horses alleged to have been in the possession of the defendant. Third, the state has failed to show by any evidence whatever that the defendant received the five head from the thief or the latter's agent. Fourth, the state has failed to show by any competent evidence that the defendant had any knowledge, actual or imputed, that the property received by him was stolen property. Fifth, the state has failed to show by any competent evidence that there was any larcenous intent in the defendant at the time of the reception and disposal of the horses in his possession. It is no doubt true, as contended for by appellant's counsel, that in order to establish defendant's guilt as charged in the information, it is incumbent upon the state to prove beyond a reasonable doubt the following essential facts: (1) That the property was stolen by some one other than the defendant. (2) That defendant thereafter received into his possession such stolen property or a portion thereof. (3) That he had guilty knowledge of the fact that said property had been stolen at the time he received it. (4) That in thus receiving said property he did so with a larcenous intent; that is, with the felonious intent to deprive the owner thereof. After considering the testimony and the argument of counsel in support of the contentions last made, we are convinced that these assignments are devoid of merit, and, without reviewing the testimony at length, suffice it to say that there was sufficient evidence to warrant the trial court denying said motions. At least, we are not prepared to hold that the record in this case dis-

closes such a failure of proof as to justify us in reversing the judgment of the trial court in denying such motions. Of course, where a case is destitute of any evidence tending to establish the guilt of the defendant, it becomes a question for the court, but, as above stated, we do not think this is such a case. Certain language in the opinion in the case of Williams v. State, 61 Wis. 281, 21 N. W. 56, is pertinent here. We quote: "The weight of the evidence and its convincing effect was for the jury, and not for the court. In criminal cases the effect which the evidence shall have as tending to establish the guilt of the accused is for the jury. If they find it insufficient to establish guilt, there is no power in the court to set aside their verdict, though the trial judge might be convinced that the verdict was against, not only the weight of the evidence, but against all the evidence. On the other hand, if there be evidence which fairly tends to prove the guilt of the defendant, and the jury find the guilt, the court cannot properly set aside such verdict because he may entertain doubts as to its sufficiency to establish such guilt. Ordinarily the decision of the trial judge upon the question of granting a new trial on the ground that the evidence is insufficient to support the verdict is held conclusive upon this court; and this rule is adhered to in a criminal case where the record contains evidence from which guilt of the accused can be fairly deduced. * * * The effect of the evidence as to its convincing character is first addressed to the jury, and afterwards to the trial judge on the motion for a new trial; and, when both the jury and the trial judge have expressed themselves satisfied with the verdict, this court will not interfere except in a clear case of the want of proof of any fact upon which the guilt of the accused can be fairly predicated."

Because of the prejudicial errors above pointed out, we are required to reverse the judgment and order appealed from, and to remand the case for further proceedings according to law, and it is so ordered.

Morgan, C. J., concurs.

Spalding, J. (concurring specially). I adhere to my opinion in State v. Hazlett, 16 N. D. 426, 113 N. W. 374, as relating to the fourth point above, and for the same reason I there gave. In other respects I concur in the foregoing opinion.