JAMES McMANUS *vs.* SUZANNE COMMOW, *et al.*

Opinion filed June 24, 1901.

**Quieting Title—Lost Deed—Proof of Execution.**

In an action to quiet title to real property, plaintiff claims title under a deed from A., who claims under an alleged lost deed from C. *Held,* that the proof of the execution and delivery of such lost deed, and the contents thereof, must be established by clear and satisfactory evidence.

**Finding of Deed Sustained.**

*Held,* further, that the evidence is sufficient to sustain the finding of the trial court that such deed was in fact executed and delivered.

**Execution—How Proved.**

The common law of evidence, requiring proof of the execution of written instruments to be made by the testimony of subscribing witnesses, is no longer in force in this state; citing Chap. 59, Laws 1897.

**Foundation for Secondary Evidence.**

Before secondary evidence of the contents of a lost instrument is permitted, such diligence should be required to be shown in attempting to produce the original as will leave no reasonable supposition that the original is in existence, or can be produced. Evidence examined, and *held,* that sufficient foundation was laid to admit secondary evidence.

**No Delivery Proven.**

C., in 1892, executed a deed of certain land to his infant daughter, 4 years of age, retaining the same in his possession until August, 1899, when he placed the same on record. There was no consideration for this conveyance, and no agreement that the same was to be considered as delivered. *Held,* construing § 3520, Rev. Codes, that there was neither an actual nor constructive delivery of the deed, and hence no title passed thereunder.

Appeal from District Court, Rolette County; *Morgan,* J.

Action by James McManus against Suzanne Common and others. Judgment for plaintiff. Defendant Suzanne Common appeals.

Affirmed.

*H. G. Middaugh, Cochrane & Corliss,* for appellants.

Under our recording law, to entitle a person holding under a second deed to priorities against the prior deed, the holder of such second deed must get his deed on record before the first deed is recorded, § 3594, Rev Codes. No matter how innocent the second purchaser may be, and notwithstanding he pays full value for the property, he cannot assail the unrecorded deed as void if the unrecorded deed is in fact put on record before his deed. *Pennsylvania Etc. Co.* v. *Neil,* 54 Pa. St. 9; *Fallas* v. *Pierce,* 30 Wis. 443; *Fort* v. *Burch,* 5 Denio. 187; *Simmonds* v. *Trump,* 144 Ill. 454.

*John Burke,* for respondent.

The deed from Commow to his daughter was not delivered, and

no title ever passed, § 3515, Rev. Codes; Warvell on Vendors, 499; *Erickson* v. *Kelly,* 81 N. W. Rep. 77, 9 N. D. 12. The recording of a deed without knowledge of the mortgagee is not equivalent to delivery. Webb on Record Title, 144; *Day* v. *Griffith,* 15 Ia. 104; *National Bank* v. *Morse,* 73 Ia. 174. McManus was in possession after the execution of the deed to him and is protected by such possession. *Nearing* v. *Coop,* 70 N. W. Rep. 1044; *Goodrich* v. *Vallandingham,* 46 Cal. 601; *Bradley* v. *West,* 60 Mo. 59; *Brown* v. *Walking,* 64 N. Y. 80.

FISK, District Judge. This is an action to quiet title to certain real property described in the complaint. The plaintiff alleges, in substance, that he is the owner in fee and in possession of the real property in question; that in December, 1892, John Commow sold and conveyed, by deed, said land to one W. W. Allen, and subsequently informed plaintiff of such sale, and that thereafter the plaintiff, relying on the representations so made by Commow, purchased the land from Allen, receiving from him a warranty deed, together with the possession of said land, which possession he has ever since held; that in August, 1899, said Commow filed for record in the office of the register of deeds of said county a deed to said land, which he executed to his daughter, Suzanne, on May 4, 1892, said daughter at that time being but 4 years of age; that said deed was without consideration, was never delivered, and that plaintiff never had any knowledge of the execution thereof until the same was filed in August, 1899; that plaintiff purchased said land from Allen in good faith, and for a valuable consideration. Defendant Suzanne Commow, by her guardian *ad litem,* answered, admitting that in May, 1892, John Commow executed to her a deed of said real estate, and that such deed was, in 1899, filed for record. There is a denial of the other allegations of the complaint. Upon these issues the action was tried in the lower court, and judgment was rendered for plaintiff. The trial court made certain findings of fact, the material portions of which are substantially as follows: (1) That on May 5, 1892, John Commow was the owner in fee of the real property in question. (2) Suzanne is a minor of the age of 12 years, and John Commow is her guardian *ad litem* for the purpose of this action. (3) That Suzanne Commow is the daughter of John Commow, and has lived with and been supported and educated since the age of 2 years by one Bruno Charboneau. (4) That on May 5, 1892, John Commow signed an instrument purporting to convey to Suzanne, then 4 years old, by warranty deed, the said lands. That Suzanne had no knowledge of such conveyance, and the same was without money consideration, and was never delivered, and that there was no agreement between the said grantor and grantee that the same was considered and understood to be delivered, and no agreement between the said parties that the same should be delivered to a third party or stranger for the benefit of the grantee. (5) That in December, 1892, the said John Commow executed and delivered to one W. W.

Allen a warranty deed to said lands for the consideration of $25, subject to a certain mortgage and taxes. (7) That in January, 1893, plaintiff, relying upon the statements of John Commow that he had sold said land to Allen, purchased the same from Allen by warranty deed, paying him therefor $650, plaintiff at said time having no knowledge of the deed to Suzanne. (8) That the said Allen retained the deed from Commow to him in his possession, and agreed to pay certain taxes on said property, and to cause said deed to be thereafter recorded. (9) That in the spring of 1893 plaintiff went into possession of said real estate, and has ever since been in possession thereof, making valuable improvements. (10) That plaintiff has paid the incumbrances on said land, and the defendant had actual notice of such payments, and of plaintiff's possession of said real estate. From these findings the trial court found as conclusions of law that the deed from John to Suzanne Commow is void and should be cancelled of record; that defendant John Commow is estopped from claiming title in, and has no title to, said real property; and that plaintiff is the owner in fee of said land, and entitled to a judgment quieting such title in him, with costs.

By this appeal we are required to review the entire case. There are but few material facts in dispute. As to the findings of the trial court numbered 1 to 4, inclusive (with the exception of the statement in finding No. 4 that the deed from John to Suzanne was never delivered), there can be no dispute. Finding No. 5, as to the conveyance from Commow to Allen, is challenged; also finding No. 7, as to statements made by Commow to plaintiff relative to the Allen deed; likewise finding No. 8, as to the loss of such deed. Findings 9 and 10, as to plaintiff's possession, etc., of said land, and the payment by him of the incumbrances thereon with Commow's knowledge, must, from the evidence, be accepted as true. It is, therefore, apparent that the principal question of fact in dispute is as to whether or not John Commow ever executed and delivered to W. W. Allen a deed to this land, as claimed by plaintiff. If he did not, then plaintiff acquired no title by his deed from Allen, and hence he could not recover in this action. The burden is upon the plaintiff to establish the fact of the execution and delivery of such deed, and this he should do by clear and satisfactory proof. Has he done so? The trial court found that he has, and this finding, as all findings of the court below, is entitled to much weight. That court had an opportunity to see the witnesses, and hence is better enabled to judge of the weight of the evidence than we are from the printed abstract. What is the testimony? James McManus, the plaintiff, testified: "Commow and I had always been neighbors and friends. He had confided in me, some time in December, that he was going to lose his pre-emption [the land in dispute] if he could not make some arrangement to meet the debt that had been due since 1890. I met him in St. John a few days either before or after Christmas, and asked him if I could make a deal with him for this land,—buy the title to it. I would try to redeem it. And he answered me that he

was very willing; he didn't know I wanted the land; that I could have had it, but he had just sold it a while prior to Allen. W. W. Allen testified: "Q. Was there a conveyance of the land to you by Commow? A. Yes, sir; there was an instrument in writing." And after testifying to facts showing the loss of the deed, and his search for the same, and his inability to find it, he testified to the contents thereof, and then continues: "Commow gave as a reason at that time why he wanted to sell the land that he was going to lose it anyway, and he wanted to sell it, and get what he could out of it. He said he was going to lose it by reason of the foreclosure of the mortgage that was against the place. That is the mortgage I was to assume. The consideration was paid Commow there. He was owing me $10 or $12 in a note, and he paid the note, and received the balance in money; the total consideration being $25 to him. I had been trying to collect this note of him. It was about due, I think, then." On cross-examination he testified: "The date of the deed that Commow gave me was some time the latter part of November or first of December. The date of the deed I gave McManus was shortly after that. Commow, at the time of the execution of this deed, was in St. John, and the papers were drawn up in the bank in St. John. I drew them up myself." On redirect: "This deed from Commow to me was acknowledged. Premeau, I think, took the acknowledgment. It was witnessed, but I don't know who the witnesses were." Frank Premeau testified that in 1892 or 1893, he, as notary public, took the acknowledgment of some instrument, but does not remember the nature of the instrument. Thomas Craig testified that he was present one time when there was a deed between Commow and Allen in relation to some land. He said: "I went in the bank one day, and Commow was there, and he was getting some money, and they were talking about dealing for land,— buying a farm; and I noticed that he didn't get very much money, and I said to Allen, afterwards: 'It must be a pretty cheap farm. He didn't get but little money.' He said, 'Yes, but he had to pay off what was against it, and there was lots against it,' or something like that." John Burke testified: "Some time in the summer of 1899, Commow met me on the street in Rolla, and says: 'John, when Allen lived up here, he got me drunk one time, and got a deed to a piece of land; but before I gave the deed to Allen I had given another deed, which was on record.'" Peter Theabear testified: "Was working around the bank in St. John for Mears in the fall of 1892. Heard something about land deal between Allen and Commow. Saw Commow sign papers about some land business." In behalf of the defense John Commow is the only person who testified on this point. He flatly contradicts the plaintiff and his witnesses. In the face of this testimony we have no hesitation in adopting the finding made by the trial court. In fact, we do not see how any different conclusion could have been reached, unless, as contended for by appellant's counsel, the plaintiff's evidence, standing alone, is insufficient upon which to base such finding. They contend that there is

no competent evidence in the case upon which a finding that Commow ever sold, made, executed, acknowledged, or delivered any deed of this land to Allen can be predicated. The fact of ·the execution and delivery of the deed must, we think, as counsel contend, be proved by clear and satisfactory evidence. Any less rigid rule would be dangerous to the security of titles, and evil practices, which it was the purpose of the statute of frauds to prevent, would be encouraged. The learned counsel for appellant filed a very elaborate brief in this court, in which a great many authorities are cited and reviewed relative to the degree of proof required to establish the existence of a lost deed. We are satisfied that these authorities state the rule correctly, which is, in substance, as we have stated above, that clear and satisfactory proof is required. The proof must clearly show that in fact such deed was executed and delivered, and that the same is lost; also the contents thereof. After a careful examination of the record, we are of the opinion that the plaintiff sufficiently proved these facts, and that the finding of the trial court that such deed was executed and delivered is correct.

Appellant's counsel make the point that there was no proof that there were not subscribing witnesses, or that the subscribing witnesses, if any, are dead, and hence that the doctrine established in *Brynjolfson* v. *Elevator Co.,* 6 N. D. 452, 77 N. W. Rep. 555, applies. This point is not sound, for the reason that since said case was decided the rule has been changed by statute. Chap. 59, Laws 1897, being § 3888a, Rev. Codes 1899. In the case cited and relied upon by counsel this court said: "With respect to future trials, this decision will not long be important, for the legislature has, at the suggestion of this court, entirely swept away the common-law rule, which for many years had been an anomaly in the law of evidence."

Counsel for appellant urge that there was no foundation laid for the proof of the contents of the lost deed by secondary evidence. They contend that the plaintiff should have been examined, as well as Mrs. Allen, the wife of W. W. Allen, concerning the lost deed. They apparently overlook the fact, which is shown by the record, that this deed never came into possession of the plaintiff. The plaintiff and W. W. Allen both testified that at the time Allen conveyed this land to the plaintiff it was agreed that Allen should retain the custody of the deed from Commow to him until such time as the taxes were paid by Allen, and then the same was to be recorded by him. Hence, it would have been useless to have called the plaintiff as a witness concerning the loss of this deed, and, as to the wife of · Mr. Allen, there is nothing showing that she had any knowledge concerning the deed. We deem this point untenable. The rule of evidence contended for by appellant's counsel that no evidence shall be given which, from the nature of the transaction, supposes there is better evidence of the fact obtainable by the parties, is elementary, and the foundation of the rule is a supposition of fraud, and, if there is better evidence of the fact, which is withheld, a presumption arises that the party had some secret motive in. not producing it. Before

secondary evidence of the contents of a lost instrument is permitted, such diligence should be shown in attempting to produce the original as will leave no reasonable supposition that the original is in existence, or can be produced. The rule is stated by some courts as follows: "The party alleging the loss of a material paper must show that he has in good faith exhausted in a reasonable degree all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. *Simpson* v. *Dall,* 3 Wall. 460, 18 L. Ed. 265; *Kearney* v. *Mayor,* etc., 92 N. Y. 621; *Loftin* v. *Loftin,* (N. C.) 1 S. E. 837; *Johnson* v. *Arnwine,* 42 N. J. Law, 451, 36 Am. Rep. 527; *Kelsey* v. *Hanmer,* 18 Conn. 311; *Daley* v. *Bernstein,* (N. M.) 28 Pac. 764; *Isley* v. *Boon,* (N. C.) 13 S. E. 795. W. W. Allen testified that he had searched for this deed five or six times; that the first time he made search was about a year ago, at which time he looked through all his old papers, old mortgages, deeds, etc., in all the places where he kept such papers, and could not find it; and that two or three months thereafter he looked every place where he did the first time, and in every place where he thought it could possibly be, and could not find any trace of it; and that a couple of months prior to the trial, and again within ten days preceding the trial, he looked through all the same papers again, and opened all envelopes, and examined each piece separately, to see if it was there, but could not find it; and he looked in every place where he kept any papers at all. The witness states that he is satisfied from the search made by him that the deed was lost. We think this satisfied the rule above referred to. ' We think the evidence was amply sufficient to show the execution and delivery of this deed; also the fact of its loss, and its contents as found by the trial court. It follows, therefore, from what we have stated, that the plaintiff obtained title to the land in question under the deeds from Commow to Allen and from Allen to him, unless the deed executed by Commow to his daughter, Suzanne, in May, 1892, operated to convey the title to her. Was there a delivery of this deed? If not, of course no title vested in her. It is undisputed that at the time this deed was executed Suzanne Commow, an infant 4 years of age, was residing with one Charboneau. It is also undisputed that Commow held this deed in his possession until August, 1899, when he placed the same on record. It is claimed that Commow intended that such deed should operate as a transfer of the land to his daughter, and that he retained it in his possession on account of the extreme youth of Suzanne. We are of the opinion that there was no delivery of said deed. It is not claimed, and could not be claimed under the evidence, that there was an actual delivery; and hence, if there was any delivery at all, it must have been a constructive delivery. Was there such a delivery? Section 3520, Rev. Codes, provides: "Though a grant is not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases: (1) When the instrument is, by agreement of the parties at the time of the execution, understood to be delivered, and under such circum-

stances that the grantee is entitled to an immediate delivery. (2) When it is delivered to a stranger for the benefit of a grantee and his. assent is showr or may be presumed." Subdivision 2 of this section has no application under the evidence, and we must, therefore look to the first subdivision. Under this there are two things essential to a constructive delivery: First, an agreement between the parties at the time of the execution of the instrument that the same is under-sood as delivered. The evidence of such an agreement having been entered into is wholly lacking. Moreover, Suzanne, being a mere infant at the time, could not enter into an agreement except through a guardian, and there is no evidence of any such agreement having been entered into; second, such agreement must be made "under circumstances which should entitle the grantee to an immediate delivery." The record discloses no circumstances surrounding the execution of this deed which would entitle Suzanne, the grantee, to an immediate delivery. She had parted with nothing, and there is no theory upon which she could compel a delivery. It is, therefore,. manifestly true that there was no delivery, either actual or constructive, of this deed, and hence Suzanne acquired no title to the land in controversy, § 3515, Rev. Codes. In view of the explicit language of § 3520 of our Code, above quoted, it would serve no useful purpose to review the many authorities cited in the brief of counsel upon this question. The judgment of the District Court was correct, and the same is accordingly affirmed. All concur.