HENRY ANDERSON, Appellant, v. THORVAL P. OVERBY, as Administrator with Will Annexed of the Estate of Andrew Anderson, Respondent.

(180 N. W. 708.)

**Deeds — evidence sustaining finding that deed was not delivered.**

In an action to determine adverse claims to certain land, plaintiff claimed title under a certain warranty deed from one Andrew Anderson, his father. Nine years after the date of the deed, and a few months after his father's death, plaintiff recorded the deed. The defendant, administrator of the father's estate with the will annexed, contended that no grant ever was made by the deed. It is conceded that it was signed and acknowledged. The sole issue in the case was whether or not it was delivered. The answer denied the delivery of it. There was evidence by and on behalf of plaintiff, tending to show delivery, and evidence on behalf of defendant, tending to show there was no delivery. The trial court made its finding of fact, to the effect that there was no delivery.

*Held,* that such finding is sustained by the evidence, and hence the judgment should be and is affirmed.

Opinion filed December 8, 1920.

Appeal from judgment of District Court of Griggs County, North Dakota, for trial *de novo, Englert,* J.

Judgment affirmed.

*E. G. Larson* and *Engerud, Divet, Holt, & Frame,* for appellant.

"A grant duly executed is presumed to have been delivered at its date." Comp. Laws, § 5496; Leonard v. Fleming, 13 N. D. 629; Tunison v. Chamblin, 88 Ill. 387; Lines v. Wilby (Ill.) 97 N. W. 846; Magee v. Allison (Iowa) 63 N. W. 822; Richmond v. Morford (Wash.) 30 Pac. 242, 31 Pac. 513; Rohr v. Alexander (Kan.) 46 Pac. 699.

Failure of the adverse party to object at the time the testimony is offered, on the statutory ground, waives the statutory bar. 40 Cyc. §§ 2349, 2351; 12 Enc. Ev. p. 1042.

*Combs & Ritchie,* for respondent.

Where the deed remains in the possession of the grantor, the presumption arises that it was not his intent to deliver it, and that it never was delivered. Cassidy v. Holland, 27 S. D. 287, 130 N. W. 771.

Parol evidence of a transaction of which the execution and delivery of a deed is part, is admissible in so far as it does not vary the written terms of the deed of conflict with the Statute of Frauds. Bjornson v. Rostad, 137 N. W. 567, Ann. Cas. 1915A, 1115.

GRACE, J. This action is one to determine adverse claims to a certain tract of land. The complaint is in the ordinary form. The plaintiff alleges that since the year of 1907 he was, and now is, the owner in fee and entitled to the possession of the tract of land in question; that one Andrew Anderson, late of Griggs County, North Dakota, died testate in that county, about the month of March, 1916; and that thereafter, pursuant to due proceedings in the county court of Griggs county, his last will and testament was proven, allowed, and admitted to probate, about the 25th of July, 1916; that the county court issued to Thorval P. Overby, the defendant, letters of administration, with the will annexed, upon the estate of the deceased, and that the defendant since has been, and now is, administrator, and wrongfully asserts claims to the property here involved as part of the deceased estate, and has asserted and exercised dominion and control over it, receiving and retain-

ing the rents and profits for the years 1916, 1917, and 1918, which are claimed to be of the value of $5,000.

The answer alleges that Andrew Anderson was the owner and in possession of said real estate from November 28, 1913, to June 3, 1916, when he died testate; that the executor named in the will refused to qualify, and thereupon the county court of Griggs county appointed the defendant as administrator, with will annexed, of the estate of Andrew Anderson, deceased; that, on the 18th day of March, 1916, Andrew Anderson, being the owner in possession of the land, leased it to Elmer Anderson and William Anderson for the years 1916, 1917, and 1918, who had possession and farmed the land during those years; that the terms of the lease were such that they were to receive one half the crops raised on the land during those years; that during those years, the administrator retained the share of the crops, which, under the terms of the lease, became the property of Andrew Anderson, and after his demise the property of his estate.

The answer, in substance, avers that the plaintiff never had possession of and never claimed to own the premises nor the crops, until about August 17, 1918. The answer further avers, "that on or about the 19th day of June, 1907, Andrew Anderson, now deceased, executed a certain instrument of conveyance, wherein and whereby he purported to convey said land to Henry Anderson, the plaintiff in this case; but this defendant avers that said instrument was never in fact or in law delivered to, or accepted by, the plaintiff during the lifetime of the said grantor or afterwards; and in this connection, the defendant alleges that, after the execution of said purported conveyance aforesaid, said Andrew Anderson remained and continued in possession of said land until on or about the 3d day of June, 1916, when he died; that he mortgaged the whole of said lands during said period to secure the payment of debts then owing by him, and that on one occasion he deeded a small parcel of said lands to Homnes School District No. 9, Griggs county, North Dakota, which said deed was executed on or about the 14th day of October, 1911, and that it was not the intent and purpose of the said Andrew Anderson to deed said land to the plaintiff, nor has the plaintiff ever paid any consideration for such deed, but that, after the death of Andrew Anderson, the plaintiff, by subterfuge, obtained possession of the deed, and on the 10th day of November, 1916, caused

the same to be recorded in the office of register of deeds of Griggs county; and that he and his wife pretended to execute and deliver a mortgage to the First National Bank of Binford, covering said tract of land, to secure the payment of $2,000, but that the defendant is informed and believes that said mortgage was not given to secure a valid and subsisting debt or for any other lawful purpose, but for the purpose of complicating the title to the land, and to assist plaintiff in carrying out the plan to deprive the estate of Andrew Anderson of the land."

The answer further alleges that, at the time of the execution of the purported conveyance, there was a first mortgage to secure the payment of $3,000 on the land, and that on November 2, 1913, Andrew Anderson paid the mortgage, and remortgaged the land for the sum of $4,300, all of which plaintiff knew and to which he made no objection, and that said mortgage is still a valid and subsisting lien upon the land, and unpaid; and that Andrew Anderson paid the taxes on the land each and every year until the time of his death.

The material facts in the case are substantially as follows: Andrew Anderson was, on the 19th day of June, 1907, and for many years prior thereto, owner in fee of the southwest quarter of section 23, Twp. 147, range 58, Griggs county.

On the date last above mentioned, he and his wife were living on the west half of section 23, same township and range, which includes the land involved in this litigation. On that date, he and his wife made, executed, and acknowledged a deed, covering the southwest quarter, in which the plaintiff was named as grantee.

Andrew Anderson, from the time the deed was made, continued to live upon the land, and exercised dominion over it, until the 3d day of June, 1916, when he died.

On March 18, 1916, he leased the land for a period of three years to Elmer and William Anderson, his sons, and the brothers of plaintiff. The lease was witnessed by the plaintiff. Prior to his death, Andrew Anderson made and published his last will and testament, and by its terms he gave to each of four of his children, including the plaintiff, a legacy of $500 in cash, to be paid from his estate, and the remainder of his estate, consisting of a half section of land, which included the land here, he gave to his children, this plaintiff and William and Elmer, his sons, Lena C. Olson, Amanda Scramstad, and Til-

lie E. Anderson, his daughters, being his only heirs, his wife having died in the year 1915.

The plaintiff was present when the will was made and published, and heard read the contents of it, and did not suggest or claim that he owned the quarter section of land here involved, or that his father had no right to will it away. He signed the petition for probate of the will. In the petition it was declared that Andrew Anderson, the father, was the owner of a half section of land, which included the land here involved.

We think there is no dispute in the facts so far stated. The plaintiff never, after the execution and acknowledgment of the deed, attempted, or claimed, to exercise dominion over the land, nor did he ever pay any taxes thereon, until after his father's death and until after he recorded the deed.

After the deed was recorded, the plaintiff and wife purported to mortgage it for $2,000, to the First National Bank of Binford. The mortgage was recorded on the 26th day of November, 1917.

A dispute in the facts squarely arises upon the question of whether or not, after the time of the execution and acknowledgment of the deed, it was delivered by Andrew Anderson to the plaintiff. The plaintiff claims it was delivered, and that, ever since then, about nine years, and until the 10th day of November, 1916, when it was delivered for record, that he had it in possession. The defendant maintains that, after the deed was executed and acknowledged, Andrew Anderson kept the deed in his possession, among his own papers, in his house, on the half section of land; that it was kept in a bureau drawer in his bedroom, in his home, and that shortly before his death plaintiff, who had access to the drawer of the bureau, which was not kept locked, wrongfully took possession of the deed, without the knowledge or consent of Andrew Anderson, and contrary to his will and desire.

After the execution and acknowledgment of the deed in question, Andrew Anderson mortgaged the half section of land for $4,300 to Northwestern National Life Insurance Company, which remains still unpaid.

The trial court made findings of fact, conclusions of law, and order for judgment in favor of defendant, and judgment was entered accordingly.

With the notice of appeal, the plaintiff served a demand for trial *de novo* in this court, on all issues. The appellant contends that the trial court's finding that the deed was not delivered to the grantee is unsupported by the evidence, and is directly contrary to all the competent evidence in the case. A decision of this point will dispose of the case.

The principle of law advanced and relied upon by the plaintiff is that the deed, having been produced by him at the trial, established prima facie that it was delivered on the date it bears.

Appellant cites a great deal of authority upon this point, among which is found § 5496, Comp. Laws 1913, which is: "A grant duly executed is presumed to have been delivered at its date." Leonard v. Fleming, 13 N. D. 629, 102 N. W. 308, is among the authority cited, as upholding that principle and the statute.

The reading of that decision convinces us it is not in point as authority in the present case. There, the question at issue was entirely different than here. There, the plaintiff claimed the right to possession and ownership through a warranty deed from one George W. Toms and wife, dated November 4, 1892, acknowledged November 8th thereafter, and recorded January 17, 1893.

The defendants there claimed ownership by virtue of a sheriff's deed dated August 2, 1894, based upon attachment proceedings in an action against Toms, under which a levy was made upon the land on December 10, 1892. The judgment in that action was entered against the defendant on March 10, 1893.

It appears that the plaintiff's grantor was a nonresident of the state, and service was claimed to have been made by publication of the summons. He died before the last publication thereof, and judgment was rendered against the defendant on the date above mentioned, and was a judgment *in rem* only. There was no substitution of the personal representatives of grantor after his death. The court did not determine whether the judgment was valid, or the sale thereunder operated to devest grantor's interest in the land, if any he had, when the attachment was levied, but disposed of the case on the merits on another ground.

There, the defendants alleged the execution and delivery of the deed. In view of that allegation the court held that they were concluded from asserting, at the trial, that there was no proof of delivery. In the pres-

ent case, the question of whether or not the deed was delivered is the only material issue. In that case, the only question at issue was the time of the delivery of the deed, defendants pleading delivery and thereby admitting the same. There, there was no evidence of the time of delivery other than the recitals in the deed, and those were held controlling in that regard.

Delivery there having been shown, the presumption was that the time of the delivery was the date of the instrument conveying the land. Section 5495, Comp. Laws 1913: "A grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor." Section 5497: "A grant cannot be delivered to the grantee conditionally. Delivery to him or to his agent as such is necessarily absolute; and the instrument takes effect thereupon, discharged of any condition on which delivery was made."

It is clear from a consideration of these statutes, that there is no grant transferring and vesting an interest, unless there is a delivery thereof, and if there is a grant, it is absolute and thereupon takes effect, discharged of any conditions attached to the delivery. If the evidence is sufficient to support the findings of fact of the trial court, which is to the effect that there was no delivery of the deed, thus warranting the conclusion of law and order of judgment in that regard, it would necessitate our holding that the judgment should be affirmed.

The evidence, we think, shows, and we think it is conceded, that the deed was executed and acknowledged, but its delivery is most strenuously denied by the defendants. To the evidence then must we turn to determine if the trial court was in error in its findings of fact and conclusions of law. Part of the evidence is direct, and part circumstantial.

The testimony of plaintiff is direct, and to the effect that he had the deed in his possession since the date of its execution. In substance, he testified on cross-examination, that his father handed him the deed in Cooperstown, telling him he could record it when he pleased; that his father there told him he intended to take a homestead in North Dakota, and did do so a short time after he gave the deed; that he saw the land and examined the entry in the Dickinson land office, and that the occasion for his doing so was that his father, after taking the homestead, suggested to him that he get the land by contesting the father's entry.

Under the United States Homestead Act, no person who is the proprietor of more than 160 acres, in any state or territory, shall acquire any right under the homestead laws.

The direct testimony of plaintiff was not objected to under § 7871, Comp. Laws 1913, which, in the circumstances stated therein, bars testimony of transactions with the deceased. As the writer views that section, it is not necessary to make such objection. We regard the statute as prohibitive in character, and that it is the duty of the court thereunder to prohibit the witness from testifying, if such witness is one within the class prohibited, under the terms of the statute, from giving testimony as to transactions with the deceased.

The plaintiff is such a witness. This, however, is not the view of the majority of the members of this court. Under their view, 'which must prevail, the direct testimony of the plaintiff, relating to transactions with the deceased, not being objected to, is admissible and is considered as competent evidence.

The testimony which was brought out from plaintiff, upon cross-examination, was of no effect under the statute, and should have been prohibited. If the plaintiff had been called as the witness of the opposite party, and then testimony of the same character elicited, as that under his cross-examination, that testimony would be admissible under the statute.

Mrs. Scramstad testified that her father made a homestead entry in 1907. Udgard's testimony shows that Andrew Anderson came into Udgard's bank and acknowledged the deed, and, at the time, used the following language: "Said he made the deed for the purpose of enabling him to take a homestead. He was then going to the western part of the state and file on a homestead, and he gave this deed for that purpose."

Udgard testified that he understood that if the old man did not take the homestead he annulled the deed. He also testified that, in the spring of Mr. Anderson's death (1916), on the road between his and the Anderson farm, Henry Anderson showed him the deed, and that at that time, Henry had the deed. Udgard said to him, "You wouldn't take advantage of that; that was given you just for the purpose your father said." Well," he said, " if they proved too mean, he would."

The facts and circumstances which support the assertion of nondelivery of the deed are quite numerous, and the more important of which may be stated as follows:

After the execution and acknowledgment of the deed, during the lifetime of his father, the plaintiff made no claim of title to the land, the father, during all that time, exercising complete dominion over it, retaining possession of it,—all of which the plaintiff knew, and to which he in no manner objected. At no time did the plaintiff suggest to the father that he claimed any right or interest in the land, by reason of the execution and acknowledgment of the deed. Plaintiff was present when the father leased the land to the two brothers above mentioned, and was cognizant of the terms of the lease, witnessed it and made not the least objection, and made no claim of title of the land, nor to the rentals or proceeds thereof. He signed the petition for probate of his father's will, which, among other things, contained a recital that the estate consisted of certain property, among which was a half section of land, which included the land involved herein.

Plaintiff was present when the father made the will, heard the discussion of its terms, and he was beneficiary under it, and by it the testator devised all of his property, including the land in question. It was nine years after the deed was executed and acknowledged before it was delivered for record.

After the death of the father, plaintiff lived on the premises occupied by the father at the time of his death. The lower floor of the house consisted of a bedroom, kitchen, and pantry. The bedroom was occupied by the father during his life and by his wife before her death in 1915. There was a door opening from the kitchen into the bedroom. The father's dresser was in the bedroom, and so located that it was in plain sight from the door to the kitchen. It had four drawers, two small and two large ones.

Mrs. Scramstad lived about 3 miles from the old home. In September, 1916, the plaintiff came to her home to get her to go to where he lived, to take care of his wife, who was about to be confined. She went and remained four or five days there. While there, she had a talk with the plaintiff with reference to the deed here under consideration. She said, in substance, that he took the paper out of the dresser, and came and showed it to her, about the 20th day of September, 1916; that he then said: " 'See here. I have got something that will fix the whole bunch of you, if I want to.' He took the paper out of the dresser and came and showed me. I saw him take it out of the dresser," and in

answer to question, she said she saw him take it out of the dresser and carry it in his hands to the room where she was; that he was about in the middle of the floor when he came with the paper, and said: " 'Here. See here. I have got something that will fix the whole bunch of you.' I said: 'Can I see it?' And he says, 'Yes,' and handed it to me. I read it and it was the deed."

The testimony shows that, after she read the deed she handed it back to him and told him he had never paid the $4,000, and he said that did not make any difference. After this, he went into the bedroom with the deed, and she did not see what he did with it. She was busy working.

On cross-examination, plaintiff testified in substance that he had showed the deed to Mrs. Scramstad at Binford, about four or five years before the father died; he testified, She was up there cooking for him, and that her husband called to see the deed; that he went upstairs, in his trunk, and got it for him; that Martin Scramstad was sitting down-stairs; that there were present the Mrs. (plaintiff's wife) and his sister (Mrs. Scramstad). Mrs. Scramstad states, in substance, in her testimony, that no such conversation ever occurred in her presence. It also appears from the testimony, that the father, after the execution and acknowledgment of the deed, deeded a portion of the land, 1 acre, for school purposes. Plaintiff knew this and made no objection to it.

Perhaps there is other evidence in support of either side, which might be referred to, but we think the material and important evidence has been here mentioned and considered, at sufficient length, for all purposes of the case. It should be kept in mind that there is a clear distinction between a case where the deed has been delivered, or the delivery thereof admitted, or the delivery thereof pleaded, and thereby admitted, as in the case of Leonard v. Fleming, 13 N. D. 629, 102 N. W. 308; and one where the principal issue is that no delivery was made.

In the former, circumstances such as the grantor retaining the possession of the premises, and exercising complete dominion over it, after the grant, and even the leasing of the same to parties other than the grantee, the grantee having full knowledge thereof, would have a different meaning and application than in the latter, where there is an absolute denial of delivery, and where the question of delivery is the real issue.

In the former, the showing of such circumstances, etc., is not incon-

sistent with the fact that the grant passed the title, whereas, in the latter, it would be. In the latter, such circumstances are very material to show that the title never passed out of the grantor; that the grant, though executed and acknowledged, did not operate to pass title; that, notwithstanding those facts, title was retained in the grantor.

In the former, in absence of fraud or collusion, the title did pass from the grantor to the grantee, and conditions attached to the delivery are of no avail, for the delivery is absolute, and the instrument takes effect, discharged of any conditions on which delivery was made. See § 5497, Comp. Laws 1913.

In every case of this character, where the issue is that no delivery was made, the question of whether delivery was made is exclusively one of fact. The testimony adduced in support of defendant's contention, including the circumstantial evidence, tends strongly to show that no title passed by the grant. The circumstances above mentioned are inconsistent with an assumption that the deed was delivered. They strongly tend to show that no delivery ever was made.

The testimony of Mrs. Scramstad shows that when the deed was shown to her it was procured from her father's dresser in the same bedroom he occupied while living; and there is direct evidence to show that, after the execution of the deed, the grantor took it with him.

Udgard testified as follows:

Q. It seems to you that the grantor kept the deed in his possession when he went out of the room?
A. That is the way it seems to me.
Q. That is you best recollection?
A. He brought it to me and then took it with him.
Q. He took it with him, himself?
A. Yes, sir.

The trial court's finding is to the effect that there was no delivery of the deed. He saw the witnesses and heard them give their testimony. We think the finding of the trial court, and its findings as a whole have ample support in the evidence.

The judgment appealed from is affirmed. Respondent is entitled to his costs and disbursements on appeal.

46 N. D.—41.

ROBINSON, J., concurs.

BRONSON, J. (specially concurring). I concur in the affirmance of the judgment. The plaintiff challenges the finding of the trial court that the deed was not delivered. Upon the record this was largely an issue of fact. The trial court, in my opinion, did not err in so finding. See McManus v. Commow, 10 N. D. 340, 344, 87 N. W. 8; Druey v. Baldwin, 41 N. D. 473, 172 N. W. 665, 182 N. W. 700.

CHRISTIANSON, Ch. J. (concurring specially). This case comes here for trial *de novo*. Hence, the members of this court are required to weigh the evidence and determine what judgment should be rendered upon the facts established by the evidence, and the rules of law properly applicable. Both parties seem to concede, and the opinion of a majority of this court is predicated upon the theory, that the pivotal question in this case is whether the deed in controversy was delivered to the plaintiff by his father, Andrew Anderson. Of course, there is, and can be, no question but that the deed was in fact executed. The undisputed evidence shows that it was; and the deed itself was recorded in the office of the register of deeds of Griggs county, and the plaintiff produced it upon the trial of this action. There is no secret as to the circumstances surrounding the execution of the deed. Andrew Anderson owned a half section of land upon which there was an existing mortgage in the sum of $3,000. He decided that he would go to the western part of this state and enter land under the Federal homestead laws. Under such laws he could not make a homestead entry if he owned more than 160 acres of land. And so he decided to convey one quarter to his eldest son, the plaintiff in this action. Thereupon, Andrew Anderson and the plaintiff went to the office of Tufte, an attorney at Cooperstown, and Andrew Anderson directed Tufte to prepare a deed conveying the land in controversy to the plaintiff. It appears that Tufte was not a notary public, and, therefore, they went to one Udgard, a notary public (who also was cashier in a bank), in the same city, and Andrew Anderson acknowledged the execution of the deed before Udgard. To both Tufte and Udgard, Andrew Anderson stated specifically the reasons why he desired to convey the land to his son. Udgard testified: "He [Andrew Anderson] said he made this deed for his convenience for the pur-

pose of enabling him to take a homestead. He was going to the western part of the state to take a homestead, and if he did not, why I understood that he annulled it." Tufte testified: "My impression is that the old man told me that he was going to deed that land to his son. I think he said he was going to file on some land." The plaintiff testified, without objection, that his father delivered the deed to him shortly after its execution. Apparently, Andrew Anderson decided to abandon his homestead, for the evidence is undisputed that he never went near the land after he made his entry; and under the law he was, of course, required to take up his residence thereon within six months after making entry. If the deed had never been delivered and was in the possession of Andrew Anderson, why did he continue to preserve the deed? Why did he keep and guard it for more than eight years after he had decided to abandon his homestead entry? From his standpoint the deed was of no use, and should have been destroyed. Not so with the plaintiff, however. It is true he was probably in doubt as to what, if any, rights he had by virtue thereof. But nevertheless it appears, both from the testimony of Udgard and Mrs. Scramstad, that plaintiff did believe the deed would be of some value to him in case trouble arose among the heirs. Hence, there was some reason for plaintiff's preserving the deed which his father had given to him; but there was absolutely no reason why the father should have preserved this deed throughout the years, if he had it in his possession. The contention of the defendant that the plaintiff took the deed from a drawer in a certain bureau where the father kept it is based upon the testimony of Mrs. Scramstad that the plaintiff took it from such drawer in September, 1916; but that occurrence was more than three months after the father had died, and in the meantime the plaintiff had been, and was then, making that place his home. Is there any reason why the son, after the father's death, might not have decided to put his valuable papers in the same bureau drawer where the father, while alive, used to keep his?

But the evidence shows clearly that the plaintiff had the deed in his possession before the father died. Udgard testified that the plaintiff exhibited the deed to him several weeks before the father's death; and Larson, one of plaintiff's attorneys, testified that plaintiff exhibited the deed to him before the father's death. Hence, the case of the plaintiff does not rest alone upon his testimony to the effect that the father de-

livered the deed to him, and upon the presumption arising from his possession thereof at the time it was offered for record, and subsequent thereto.

Plaintiff's possession of the deed raised a strong presumption that it was delivered to him at the time it was executed. Comp. Laws 1913, § 5496. It is also presumed that a person is innocent of crime or wrong; that private transactions have been fair and regular; and that the law has been followed. Comp. Laws 1913, subds. 1, 19 and 33, § 7936.

These presumptions are all in harmony with the theory that the deed was delivered to the plaintiff. For if the deed was not delivered then Andrew Anderson did not carry out his intentions as expressed when he executed the deed; he went out to the Dickinson land office, and committed a crime in stating under oath, as part of his application to make homestead entry, that he did not own more than 160 acres of land; the plaintiff committed larceny in obtaining possession of the deed; and the father, Andrew Anderson, after having abandoned all idea of delivering the deed to his son, nevertheless kept the deed for nine long years. It seems to me that when the evidence is construed in the light of applicable presumptions, it shows that the deed was delivered to the plaintiff at or about its date.

But while I am of the opinion that the evidence shows a delivery of the deed to the plaintiff, I am inclined to the view that he is precluded from claiming under it. The evidence shows that the father, during his lifetime, exercised full dominion over the premises in controversy, and in every respect treated them as his own. He mortgaged them (together with an adjoining quarter) for $4,300. He sold and conveyed part of them. About three months before his death he leased the premises for three years to his two youngest sons, and the plaintiff signed as one of the subscribing witnesses to the lease. The plaintiff procured the scrivener who prepared the will; and after execution it was delivered to the plaintiff. About ten days after the father's death the plaintiff took the will to the county judge's office, and instituted proceedings to have the will admitted to probate. The plaintiff signed and verified the petition for probate of the will. In such petition it was averred that the estate of said decedent consisted of one half section of land in Romness township, in Griggs county, which did not exceed in value the sum of $12,000; of goods, chattels, and personal property of the value

of about $3,000; and that the probable amount of debts due and unpaid left by the deceased was $4,400. The inventory and appraisement in the probate proceedings shows that the land was appraised at $10,000, and is encumbered in the sum of $4,300; and that all the personal property of the deceased was of the value of $3,532.63.

In the will a bequest of $500 was made to each of four children, including the plaintiff. The will further provided that all the remainder of the estate should be divided equally among all of testator's six children. The plaintiff admitted that he had received and accepted the $500 bequeathed him in the will. It seems clear that the decedent at the time he made and published his last will and testament was under the impression that the quarter in controversy was his property, and was being disposed of by, and would be distributed in accordance with the terms of, the will. In fact this is virtually conceded by plaintiff's counsel, for in their brief in this court they say: "It may well be conceded, and in fact we are satisfied, that the fact is that after Anderson, Sr., concluded to abandon his homestead entry, there was a tacit understanding on the part of both him and Henry that the latter would not make any claim under the deed, or it may have been that both believed that the deed was no longer of any effect when the old man abandoned his homestead entry." The testimony of the scrivener also shows that at the time the will was drawn in March, 1916, the testator, in discussing its terms, referred to the land in question as his property and as property disposed of by the will. The plaintiff seems to have put the same construction on the will when he petitioned to have it admitted to probate. In these circumstances, it seems to me that the plaintiff is precluded from claiming that he is the owner of the land in controversy. For it is a well-settled rule in equity that a person will not be permitted to hold both under and against a will. Herbert v. Wren, 7 Cranch, 374, 378, 3 L. ed. 374, 377. In other words, he may not (with a full knowledge of the situation) take any beneficial interest under a will, and at the same time set up any right or claim of his own, *de hors* the will and adverse to it,—even though such claim otherwise is legal and well founded,—which defeats, or in any way prevents the full effect and operation of every part of the will. Bigelow, Estoppel, 6th ed. pp. 733, 734; Jarman, Wills, 6th ed. pp. 532 et seq.; Story, Eq. Jur. 14th ed. § 1454; Pom. Eq. Jur. 3d ed. §§ 462 et seq.; 40 Cyc. 1959 et seq.;

Hyde v. Baldwin, 17 Pick. 303, 308; Fry v. Morrison, 159 Ill. 244, 42 N. E. 774; Drake v. Wild, 70 Vt. 52, 39 Atl. 248; Utermehle v. Norment, 197 U. S. 40, 49 L. ed. 655, 25 Sup. Ct. Rep. 291, 3 Ann. Cas. 520.

BIRDZELL, J., concurs.