NORMA L. GODDARD *vs.* BLANCHE P. DUPREE & others.

Suffolk.   October 10, 1947. — January 6, 1948.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Will,* Validity.   *Unsound Mind.*

Testamentary capacity requires ability on the part of the testator to understand and carry in mind, in a general way, the nature and situation of his property and his relations to those persons who would naturally have some claim to his remembrance; freedom from delusion which is the effect of disease or weakness and which might influence the disposition of his property; and ability at the time of execution of an alleged will to comprehend the nature of the act of making a will.   Per QUA, C.J.

Upon conflicting evidence, fully reported, at the hearing by a judge of probate of a petition for proof of an alleged will of a woman eighty-three years of age who had died of a complication of diseases four days after the execution of the alleged will, a finding by the judge that she was not of sound mind when the instrument was executed was not plainly wrong, and disallowance of the instrument was affirmed.

PETITION, filed in the Probate Court for the county of Suffolk on August 14, 1946, for proof of the will of Nellie E. W. Bickford, late of Boston.

The case was heard by *Wilson,* J.

*H. C. Dunbar,* (*G. E. Healey* with him,) for the petitioner.

*W. C. Lombard & R. T. Hamlet,* (*W. P. Lombard* with them,) for the respondents.

QUA, C.J.   The petitioner appeals from a decree of the Probate Court disallowing an instrument offered for probate as the will of Nellie E. W. Bickford, late of Boston.   The case was fully heard on the facts by the judge of probate without having been submitted to a jury.   The decree recites findings of fact that the testatrix was not of sound mind and that the execution of the will was procured by undue influence.   The evidence is reported.

On the issue of mental competence, although there is a presumption of sanity, the general burden of proof rested upon the petitioner.   *Clifford* v. *Taylor,* 204 Mass. 358, 361.

*Panell* v. *Rosa*, 228 Mass. 594. *Johnson* v. *Jenks*, 253 Mass. 25, 30. Evidence having been introduced of lack of mental competence, the crucial question for our decision is whether we can say that the finding of the lack of such competence was plainly wrong. *Old Colony Trust Co.* v. *Yonge*, 302 Mass. 49, 50. *Greene* v. *Cronin*, 314 Mass. 336. The question is not what finding we ourselves would have made on the same evidence. The case is one in which widely differing inferences could be drawn from the evidence, and it is not one where the drawing of inferences can be separated from the evaluation of the testimony itself. Compare *Malone* v. *Walsh*, 315 Mass. 484, 490. Most of the evidence was given orally. The value of the testimony of the witnesses depended in great measure upon their appearance and their manner of testifying on the stand. In such a case we must give full recognition to the advantage possessed by the trial judge, who saw and heard the witnesses.

The evidence is too voluminous to be stated here in detail. After a careful examination of all of it we can do no more than to indicate in bare outline the salient portions which, if accepted by the trial judge, would, we think, justify his finding that the deceased was not competent to make a will.

The deceased was eighty-three years of age. The alleged will was executed on Tuesday, August 6, 1946. Death occurred four days later on Saturday, August 10. The death record gives the causes of death as pulmonary edema, cardiorenal disease, chronic myocarditis, and chronic nephritis. There is also a "question" of a fracture in the leg, the deceased having fallen three or four days before the alleged will was made. A physician who had treated the deceased in the spring and fall of 1945 and in July, 1946, and who visited her again the day before the alleged will was made, testified that in July he had advised her "in no uncertain terms that she certainly wasn't able to look after her affairs" and must have someone "appointed" or someone to look after her. He further testified that she was decidedly senile the year before; that on the day before the alleged will

was made she was decidedly confused and did not know where she had been or what had happened to her; and that he felt she was not capable of conducting her business affairs. She dismissed this physician that day. A second physician who was then called saw the deceased the night before the alleged will was made, found her suffering from a heart condition, slight congestion of the lungs, distended abdomen, edema of lower extremities and extreme pain in the leg. He prescribed sedatives but declined to go on with the case because he had not been authorized by a second cousin, who was the only relative of the deceased, and because he "didn't care to be involved" in litigation. A third physician first saw the deceased the day after the alleged will was made. In his opinion she was "intelligent" for two days after the day the alleged will was made and then was not coherent and was confused and her condition grew worse until her death. He could not say with certainty what her mental condition was on the day the alleged will was made, as he did not see her on that day.

In addition to this not altogether satisfactory medical testimony there was evidence that on Sunday night, two days before the alleged will was made, the deceased, with her consent, was brought to a hospital in Medford, but almost at once insisted upon leaving, was very confused, thought she had been at a meeting of "the D. A. R." in Portland, Maine, said she had been there ten days and it was time to go home, walked up and down the corridor in spite of her injured leg, banged upon the doors with her cane, struck a nurse with her cane and her hand, and had to be removed from the hospital to the room where she had previously lived and where she continued in an excited state until given a sedative at two o'clock of the morning of the day before the alleged will was executed. There was other evidence of her appearance and conduct shortly before or at about the time of the execution of the alleged will which might be taken to bear upon her mental condition. On the day before the alleged will was made she appeared "dazed," "confused," and "stuporous." About a week before, she telephoned for her cousin to come from New

Hampshire to help her, and when the cousin came had forgotten about making the call. Four days before the alleged will was made "she was very confused and we had hard work to keep any conversation going that she could take part in and keep her mind on it at all." She said she had been to a bank the day before but did not know what bank. She said she had lost a sum of money in her room. A search failed to reveal it. She said she had $300 in a pocket in her corset. Examination of the corset did not disclose it. She went to bed with her clothes and shoes on, and forgot whether she had eaten her breakfast and whether she had taken her medicine. No question is raised as to the admissibility of any of the evidence.

Testamentary capacity requires ability on the part of the testator to understand and carry in mind, in a general way, the nature and situation of his property and his relations to those persons who would naturally have some claim to his remembrance. It requires freedom from delusion which is the effect of disease or weakness and which might influence the disposition of his property. And it requires ability at the time of execution of the alleged will to comprehend the nature of the act of making a will. *Whitney* v. *Twombly*, 136 Mass. 145, 147, 148. *Ronan* v. *Moroney*, 313 Mass. 475. We cannot say that the judge was plainly wrong in giving more weight to the evidence hereinbefore outlined than he did to that of the witnesses to the alleged will or to that of an interested beneficiary under it, and in failing to be convinced that the deceased possessed testamentary capacity. It is clear that the deceased suffered from a complication of serious ailments, and that at least from the time of her brief visit to the Medford hospital, two days before the alleged will was made, until her death, four days after it was made, deterioration was rapid. Very likely a finding the other way would not have been disturbed.

Since in our opinion the actual decree can rest upon the recited finding of lack of testamentary capacity, it is unnecessary to consider the further finding of undue influence. That finding does not enter into the final result of the case.

Costs and expenses of this appeal are to be allowed by the Probate Court to the petitioner and the respondents to be paid out of the estate of the deceased by the personal representative thereof when appointed.

*Decree affirmed.*