**In the Matter of the ESTATE OF Fred R. PAPINEAU, Deceased.**

**Daniel U. PAPINEAU, Petitioner and Appellant,**

v.

**ALL OTHER PERSONS UNKNOWN CLAIMING ANY ESTATE OR INTEREST IN OR LIEN OR ENCUMBRANCE UPON THE PROPERTY DESCRIBED IN THE PETITION OR AGAINST THE ESTATE OF SAID DECEASED, Respondents and Appellees.**

**Civ. No. 11231.**

Supreme Court of North Dakota.

Nov. 19, 1986.

---

Rustad & Schmitz, Williston, for petitioner and appellant; argued by Gerald Rustad.

McIntee & Whisenand, Williston, for respondents and appellees Luella McGraw, Betty Peiters, Judy Ross, Richard Henderson, Glenn Henderson, Teri Vanderpool, Emery Henderson, Louise Villacorte, Ruby Hermosisima, & Lillian Welch; argued by Kathleen Key-Imes.

Kenneth Papineau, Watford City, for respondent and appellee; pro se.

MESCHKE, Justice.

Daniel U. Papineau appeals from an order determining that minerals in North Dakota owned by Fred Papineau passed to his heirs by intestate succession and from an order denying Daniel's motion to alter or amend the first order. We reverse and remand.

Fred died in the State of Washington in 1968. Daniel did not then probate a will purportedly executed by Fred in 1953 because the estate was not deemed valuable enough to make probate worthwhile. In 1984 Daniel attempted to establish ownership of the minerals through two wills, the 1953 will and another purportedly executed by Fred in 1959, which was discovered shortly before the hearing in this case. Both wills left all of Fred's estate to Daniel.

Because § 30.1–12–08(3–108), N.D.C.C., fixes a three-year period within which to probate a will, Daniel relied on § 30.1–12–

02, N.D.C.C., which provides in relevant part:

"*30.1–12–02(3–102). Necessity of order of probate for will.*—... a duly executed and unrevoked will which has not been probated may be admitted as evidence of a devise if:

"1. No court proceeding concerning the succession or administration of the estate has occurred; and

"2. Either the devisee or his successors and assigns possessed the property devised in accordance with the provisions of the will, or the property devised was not possessed or claimed by anyone by virtue of the decedent's title during the time period for testacy proceedings." [1]

At the hearing on his petition, Daniel introduced an affidavit of Kenneth D. Beckley, a Washington lawyer who found the 1959 will in his office. In the affidavit, Beckley identified "the signatures of two of the witnesses namely John D. Thomas, Jr., an attorney at law practicing law in the City of Ellensburg and Barbara Zetzsche."

■ The trial court determined that § 30.1–15–06(3–406), N.D.C.C., was applicable. Concluding that no witness identified the testator's signature as being that of Fred and that Beckley's affidavit established "nothing more than that he found this will ... and that he recognizes the signatures of two (2) of the ... attesting witnesses," the trial court held that Daniel had failed to establish due execution of the will.[2] Accordingly, the court determined, without reaching the question of whether Daniel had possessed the property,[3] that

Fred's estate should pass to his heirs by intestate succession.

Section 30.1–15–06(3–406), N.D.C.C., provides in part:

"*Formal testacy proceedings—Contested cases—Testimony of attesting witnesses.*—1. If evidence concerning execution of an attested will which is not self-proved is necessary in contested cases, the testimony of at least one of the attesting witnesses, if within the state, competent, and able to testify, is required. Due execution of an attested or unattested will may be proved by other evidence."

■ The trial court erred in applying § 30.1–15–06(3–406), N.D.C.C. Although Daniel's petition was styled a "Petition To Establish Heirship And Right Of Succession," the record shows that he was attempting to establish ownership of property through an unprobated will as "evidence of a devise" under § 30.1–12–02(3–102), N.D.C.C. Daniel did not claim that he, or anyone else, was an heir entitled to the minerals under the law of intestate succession. Daniel also did not attempt to probate a will. Thus the proceeding was not a "formal testacy proceeding" as defined by § 30.1–01–06(44)[1–201(44) ], N.D.C.C., or § 30.1–15–01(3–401), N.D.C.C. Since § 30.-1–15–06(3–406), N.D.C.C., applies to a formal testacy proceeding, it did not directly apply to this proceeding. Because the trial court's erroneous reading of § 30.1–15–06(3–406), N.D.C.C., may have led the court to hold Daniel to an unduly heavy burden of proof, we must determine whether or

---

1. The Editorial Board Comment to § 30.1–12–02(3–102), N.D.C.C., notes that "[t]he exceptions ... are designed to make the probate requirement inapplicable where circumstances led survivors ... to believe that there was no point to probating a will....").

2. The trial court refused to consider an affidavit of two attesting witnesses procured after the hearing because "this additional evidence could, with reasonable diligence on the part of Petitioner, have been discovered prior to, and produced at the hearing on November 28, 1984."

3. There was evidence that Daniel, with the knowledge of the respondents, received lease payments associated with the property for a number of years. There was also evidence that Fred's other heirs had recently been requested to ratify an oil and gas lease made by Daniel, and that several had done so and had received payment therefor. Oil and gas leases constitute evidence of possession. *Nelson v. Christianson,* 343 N.W.2d 375 (N.D.1984); *Sickler v. Pope,* 326 N.W.2d 86 (N.D.1982). The trial court did not reach the question of possession. Neither do we. Whether or not Daniel possessed the property is a determination to be made initially by the trial court.

not Daniel sufficiently demonstrated execution of either will to "evidence" the devise to him.

Section 30.1–35–01(2)(a)[8–101], N.D.C.C., specifies:

"No provision of this title, however, shall be effective to invalidate any will executed prior to July 1, 1975, when that will would be valid under the laws of this state in effect at the time of its execution."

At the time the 1959 will was purportedly executed,[4] § 56–03–02, N.D.C.C., provided:

"*56–03–02. How wills must be executed and attested.*—Every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:

"1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence, and by his direction, must subscribe his name thereto;

"2. It must be subscribed in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority;

"3. The testator, at the time of subscribing or acknowledging the same, must declare to the attesting witnesses that the instrument is his will;

"4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will, at the testator's request, and in his presence;

"5. A witness to a written will must write with his name his place of residence; and a person who subscribes a testator's name by the testator's direction must write his own name as a witness to the will. A violation of this subsection does not affect the validity of the will."

The 1959 will contains an attestation clause, following the testator's signature, subscribed to by three witnesses:

"The foregoing instrument, consisting of four pages, including this, was at the date thereof by Fred Papineau, the testator named therein, signed, sealed and published as, and declared by him to be his Last Will and Testament, in the presence of us, who at his request and in his presence, and in the presence of each other, and who being of the opinion that he, at the time of executing this Will, was of sound and disposing mind and memory, and not acting under duress, menace, fraud or undue influence of any person, have subscribed our names as witnesses thereto."

▮ While Daniel did not specifically identify Fred's signature, his identification of the 1959 will as "a will from ... Fred Papineau" implicitly does so. There is no evidence that any of the attesting witnesses were within North Dakota at the time of the hearing. Beckley's affidavit stated that he recognized the signatures of two of the attesting witnesses. It has not been asserted on appeal that the court erred in admitting that affidavit. Thus the signatures of two of the attesting witnesses have been established by unquestioned proof.

▮ *In re Baur's Estate,* 79 N.D. 113, 54 N.W.2d 891, at 894 (1952), held that:

"[W]here the signatures of the attesting witnesses are established by unquestioned proof, the recitals of the attestation clause of due execution of the will are presumed to be true and can only be overcome by clear and convincing testimony."

---

**4.** The 1959 will was purportedly executed in the State of Washington. Section 30.1–08–06(2–506), N.D.C.C., provides that "[a] written will is valid if executed in compliance with section 30.1–08–02 or 30.1–08–03 or if its execution complies with the law at the time of execution of the place where the will is executed." Former § 56–03–06, N.D.C.C., in effect at the time

the will was purportedly executed, effected the same result. Since there is no evidence in the record as to the law in effect in Washington at the time of the execution of the will, we are guided by § 31–11–03(39), N.D.C.C., which creates a disputable presumption "[t]hat the foreign law is the same as the law of this state."

Unless overcome by clear and convincing testimony, the recitals in the attestation clause of the 1959 will are presumed to be true and establish that the 1959 will was duly executed in accordance with the requirements of § 56–03–02, N.D.C.C., as that statute existed at the time the will was executed. *See also* Rule 301, N.D.R.Ev., and the Explanatory Note, which says that "a presumption imposes upon the party against whom it is directed the burden of proving its non existence." The respondents in this case did not offer any evidence to rebut the presumption of execution raised by the attestation clause.

■ The trial court received the 1959 will into evidence at the hearing but, later, in its memorandum opinion determined that it was not admissible because Daniel failed to prove its due execution. Daniel asserts that the court's admission of the will misled him into not introducing other evidence. The respondents assert that the trial court only conditionally received the will under Rule 104(b), N.D.R.Ev., and later properly ruled it inadmissible because a condition of fact—due execution—upon which the relevancy of the will depended, was never fulfilled. Assuming that the trial court received the will subject to "the introduction of evidence sufficient to support a finding of the fulfillment of the condition" (Rule 104(b), N.D.R.Ev.) of proof of due execution, we conclude that the condition was fulfilled by Beckley's affidavit establishing the signatures of two of the attesting witnesses which, with the attestation clause, raised a presumption of due execution. Only "prima facie proof of due execution" is required unless conflicting evidence is advanced. *See* § 30.1–15–07(3–407), N.D. C.C. The court therefore erred in ruling the will inadmissible and disregarding it.

The respondent's reliance on § 31–08–02, N.D.C.C., for the proposition that due execution of the will could not be proved by proof of the attesting witnesses' signatures is misplaced. That section provides:

*"31–08–02. Proof of witnessed written instruments.*—In proving any written instrument or contract to which there is a subscribing witness, or to which there are two or more subscribing witnesses, it shall not be necessary to call any such witness or witnesses, ... It shall not be permissible, in any case, to prove such instrument or contract by proof of the handwriting of the subscribing witness or witnesses, ..." [5]

That statute was originally enacted in S.L. 1897, ch. 59, § 1. That it was not intended to apply to proving execution of a will is indicated by the fact that the same legislative assembly also enacted S.L. 1897, ch. 111, § 13, which provided:

"If none of the subscribing witnesses reside in the county, and are not present at the time appointed for proving the will, the court may admit the testimony of other witnesses to prove the sanity of the testator and the execution of the will; and as evidence of the execution, it may admit proof of the handwriting of the testator and the subscribing witnesses or any of them."

That section was a reenactment of § 24 of the Probate Code of 1877 and was later codified at § 30–06–04, N.D.C.C, which was repealed by S.L. 1973, ch. 257, § 82. One of our present provisions on proof of execution of a will, § 30.1–15–06(3–406), N.D. C.C., which we have previously discussed, provides for proof of due execution through the testimony of attesting witnesses or other evidence. "[O]ther evidence" is sufficiently broad to encompass proof of execution by proof of attesting witnesses' signatures.

■ In its memorandum opinion, the trial court noted "the lack of any evidence as to Fred Papineau's testamentary capacity or freedom from undue influence." Testamentary capacity is presumed and the burden of proving lack of capacity is on con-

---

**5.** Since the purpose of the statute was to abrogate the common-law requirement of proof of execution by testimony of subscribing witnesses [*McManus v. Commow*, 10 N.D. 340, 87 N.W. 8 (1901)], it is questionable whether use of the word "not" in the second sentence resulted from intention or oversight.

testants, who also have the burden of sustaining a challenge to the validity of a will on the ground of undue influence. *Stormon v. Weiss*, 65 N.W.2d 475 (N.D.1954). *See also*, § 30.1–15–07(3–407), N.D.C.C.

The respondents also contend that Daniel was required to prove that the 1959 will was unrevoked. Generally, when a will is shown to have been validly executed, the burden of proving revocation rests on one claiming revocation. *See e.g.*, § 30.1–15–07(3–407), N.D.C.C.; 95 C.J.S., *Wills* § 385 (1957); 79 Am.Jur.2d. *Wills* §§ 597, 605 (1975).

Because Daniel established due execution of the 1959 will, we reverse the trial court's order and remand for further proceedings not inconsistent with this opinion.[6]

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

**6.** Our disposition renders it unnecessary to address the trial court's denial of Daniel's motion to alter or amend the order.