MANFORD L. PALMER vs. JOHN L. PALMER & another.[1]

Essex.  October 9, 1986. — December 9, 1986.

Present: GRANT, KASS, & WARNER, JJ.

*Evidence*, Hearsay, Court record, Conspiracy, Cumulative, Admitted de bene. *Witness*, Impeachment. *Will*, Allowance, Testamentary capacity, Validity. *Error*, Harmless. *Practice, Civil*, Findings by judge.

In proceedings contesting a will executed by a woman in a hospital in Maine following a series of grave illnesses and while she was still suffering from consequential disabilities, the judge erred in relying upon the truth of a hearsay assertion concerning the decedent's mental incapacity contained in a copy of a letter, written by a physician, the original of which had been filed in a different proceeding seeking the appointment of a guardian for the decedent. [247]

In a contested will case, in which a letter from the decedent's daughter was admitted only for the purpose of impeaching her credibility as a witness, it was error for the judge in his report of material facts to accept and rely on the truth of the letter's accusations against the proponent of the will. [247-248]

In a contested will case, the judge erred in admitting, and accepting for the truth of its assertions, a letter from the decedent's daughter to a third party containing statements critical of the proponent of the will and expressing the daughter's characterizations and mental impressions regarding the relationship between the proponent and the decedent, where the evidence was hearsay and came within none of the exceptions to the hearsay rule. [248]

In a contested will case, any error in the admission of a letter for the truth of hearsay assertions it contained was harmless, where the letter in important respects was merely cumulative of other testimony at trial. [249]

On appeal from a decree in a contested will case, there was no merit to the proponent's contention that the judge erred in considering evidence admitted de bene concerning an extra-marital affair of the proponent some twenty years before the decedent's death, where the judge had informed the proponent of his right to move to strike the evidence absent later relevant connection, and the proponent had failed to do so. [249]

---

[1] David A. Palmer.

At the trial of a contested will case, the evidence, including hospital records, the deposition of the decedent's attending physician, and testimony of the lawyer who had prepared the will, satisfied the proponent's burden of showing by a fair preponderance of the competent evidence that the decedent had testamentary capacity on the day she executed the will. [250-252]

Where at the trial of a contested will case there was competent evidence on each of the factors necessary to prove undue influence, but the judge's assessment of the credibility of the oral testimony appeared to be affected by evidence improperly admitted and considered, the decree was reversed and the case remanded for a new trial on the issue of undue influence only, to be held before a different Probate Court judge. [252-253]

PETITION filed in the Essex Division of the Probate and Family Court Department on March 24, 1980.

The case was heard by *Albert P. Pettoruto, J.*

*John A. Christopher* for Manford L. Palmer.

*Michael J. McLane* for John L. Palmer & another.

WARNER, J. On this appeal from a decree of the Probate Court disallowing the purported will (the will) of Annette C. Palmer (the decedent) on the grounds of testamentary incapacity and undue influence, the proponent, Manford L. Palmer, the husband of the decedent and sole beneficiary of the will, challenges (1) the admission of certain evidence and (2) the factual and legal underpinnings of the decree.[2] The evidence is reported, and the judge made a report of material facts.[3]

We discuss relevant factual detail later in this opinion. We address first the evidentiary questions. For this purpose, suffice it to say that the decedent executed the will on October 18, 1978, in a hospital in Maine following a series of grave illnesses and while she was still suffering from serious consequential disabilities. The contestants of the will were the decedent's two

---

[2] Appellate counsel for the proponent was not trial counsel.

[3] The decree was entered on May 16, 1985. The request for a report of material facts was filed on June 10, 1985, and appears to have been untimely. See G. L. c. 215, § 11. The trial was conducted on March 29 and 30, and June 22, 1984. The last of the transcripts of the trial was filed on February 26, 1985. The report of material facts was not filed until September 26, 1985.

sons, John and David. A third child, Patricia, withdrew her appearance against the allowance of the will just before the beginning of the trial.

1. *The Ware letter.* The judge admitted in evidence a copy of a letter of Dr. Donald E. Ware, the original of which had been filed in a proceeding in Maine for the appointment of a guardian for the decedent. In the letter, dated October 12, 1978 (six days before the execution of the will on October 18), Dr. Ware stated that the decedent had suffered a stroke and heart attack "which has left her mentally incapacitated and incompetent to manage her own estate and to protect her own rights." The judge expressly limited the evidence "not as to the truth of what it contains but only that this particular letter was filed through the Probate Court in the matter of a guardianship." Although the relevance of the letter for the purpose for which it was admitted is not apparent, the judge's initial refusal to accept it for the truth of its content was correct. The content of the letter was hearsay and subject to none of the exceptions to the hearsay rule. See *Tobin* v. *Boston Herald-Traveler Corp.,* 324 Mass. 478, 482-485 (1949). It was neither in form nor substance admissible under the court records exception. G. L. c. 233, § 69. See *Jacobs* v. *Hertz Corp.,* 358 Mass. 541, 543-544 (1970). The proponent was entitled "to have the use of such letter limited to the purposes for which it was admissible." *Bouchard* v. *Bouchard,* 313 Mass. 531, 537 (1943). In his report of material facts, the judge erroneously relied on the letter for the truth of its assertion concerning the decedent's mental incapacity.

2. *The Councilman letter.* A copy of a letter, dated February 27, 1980, from the decedent's daughter, Patricia, to Dr. Elizabeth Councilman (a physician who had in the past treated the decedent) was offered by the contestants to impeach the testimony of Patricia that her father, the proponent, had treated the decedent well. In the letter, Patricia accused the proponent of mistreating the decedent during the two-year period in which the proponent, the decedent and Patricia lived together in Virginia following the execution of the will. The colloquies between the judge and counsel make clear that the letter was

admitted only for the purpose of impeachment. The proponent was entitled to rely on that limitation. See *Bouchard* v. *Bouchard, supra.* For that reason, if no other (see the later discussion of the Morris letter), it was error for the judge to accept and rely on the truth of the accusations of mistreatment in his report of material facts. See *Wheeler* v. *Howes,* 337 Mass. 425, 427 (1958).

3. *The Morris letter.* Over the proponent's hearsay objection, the judge admitted, without limitation, a copy of a lengthy letter, dated February 27, 1980, written by Patricia to Dr. David L. Morris, who was then treating the decedent at a hospital in Virginia. In this letter, Patricia repeated many of the accusations made in the Councilman letter and made others relating to past and current conduct of the proponent. In his report of material facts, the judge accepted and relied on the truth of some of the accusations contained in the letter. It was error to admit the letter.

The letter consisted of out-of-court statements of Patricia to a third party concerning the alleged bad acts of the proponent and characterizations and mental impressions of Patricia regarding the relationship of the proponent and the decedent. In those respects, the letter was offered and accepted by the judge for the truth of its assertions. The evidence was in form hearsay and came within none of the exceptions to the hearsay rule. See generally Liacos, Massachusetts Evidence 262 et seq. (5th ed. 1981 & Supp. 1985).

Even if we were to accept the contestants' argument that the judge implicitly found that the proponent and Patricia engaged in a conspiracy unduly to influence the decedent (the judge found that the proponent exercised undue influence "directed" through Patricia), the evidence was not admissible to prove the truth of Patricia's assertions. In order for the statements of one conspirator to be admissible against another, it must be shown that a conpiracy continued to exist at the time the statements were made and that they were made in furtherance of the conspiracy. See *Whitcomb* v. *Reed-Prentice Co.,* 262 Mass. 348, 362 (1928); *Commonwealth* v. *Beckett,* 373 Mass. 329, 339 (1977). The evidence here fails on both scores.

The letter itself clearly indicates that, if a conspiracy ever did exist, it had ended; the statements were not in furtherance of any conspiracy.

4. *The David Palmer letter.* In direct testimony, Patricia said that the decedent was "an intelligent woman, she knew what she was doing, and she would not have signed [the will] unless she had wanted to." On cross-examination Patricia was asked, without objection, about the contents of a letter, dated March 4, 1980, which she wrote to her brother David. Later, during David's direct testimony, the letter was introduced in evidence over the proponent's hearsay objection. In his report of material facts, the judge relied on the truth of the assertions in the letter, notably: "I felt dirty all over when I saw what Dad had done, and what I had told [the decedent] she was safe to sign." Any error in the admission of the letter in evidence for the truth of the assertions contained in it, a question which we do not decide, was harmless. Patricia had testified, without objection, acknowledging (with explanations) making the damaging statements; the letter was in important respects merely cumulative of that testimony. See *Bendett* v. *Bendett,* 315 Mass. 59, 65-66 (1943). The admissibility of the letter in any retrial (which we later order) will depend upon the purpose for which it is offered.

5. *Evidence admitted de bene.* There is nothing in the proponent's argument that the judge erred in considering evidence received de bene concerning an extra-marital affair of the proponent with a woman in the early 1960's. The judge informed the proponent of his right to move to strike the evidence absent later relevant connection. The proponent did not do so. See *Brek's Case,* 335 Mass. 144, 148-149 (1956); *Muldoon* v. *West End Chevrolet, Inc.,* 338 Mass. 91, 98 (1958); *Peterson, petitioner,* 354 Mass. 110, 115 & n.1 (1968).

We turn to an examination of the evidence and the judge's findings, stripped of those based on improperly admitted or relied upon evidence, on the issues of testamentary capacity and undue influence. In doing so, "[i]t is our obligation to review the evidence and reach a decision in accordance with our own reasoning and understanding, giving due weight to

the findings of the trial judge, which we will not reverse unless they are plainly wrong, and finding for ourselves any additional facts we believe to be justified by the evidence." *Olsson* v. *Waite,* 373 Mass. 517, 520 (1977), quoting from *Petition for Revocation of a Decree for Adoption of a Minor,* 345 Mass. 663, 669 (1963). *Heinrich* v. *Silvernail, ante* 218, 223 (1986).

6. *Testamentary capacity.* Where there is some evidence of lack of testamentary capacity, the presumption of sanity loses effect and "the burden [is] on the proponent of the will to satisfy the tribunal of fact by a fair preponderance of the evidence that the deceased was of sound mind and testamentary capacity when the instrument was executed." *Santry* v. *France,* 327 Mass. 174, 176 (1951). That burden is met by a showing that it is more probable than not that, at the time of execution of the will, the decedent's condition comported with well-settled standards. "Testamentary capacity requires ability on the part of the testator to understand and carry in mind, in a general way, the nature and situation of his property and his relations to those persons who would naturally have some claim to his remembrance. It requires freedom from delusion which is the effect of disease or weakness and which might influence the disposition of his property. And it requires ability at the time of execution of the alleged will to comprehend the nature of the act of making a will." *Goddard* v. *Dupree,* 322 Mass. 247, 250 (1948).

The evidence on this issue was largely documentary (hospital records and a deposition). At the time of the execution of the will, October 18, 1978, the decedent was in a hospital in Maine, recovering from a stroke and other grave illnesses. She was in general unable to communicate other than by saying "yes" or "no" or by shaking or nodding her head. The decedent was in weak physical condition and was easily agitated. Dr. William L. Medd, who had treated the decedent for coronary disease on and off since August of 1977, and who was her attending physician during the hospitalization which began on September 25, 1978, made a note in the decedent's record on October 13, 1978, that she was then legally incompetent to handle her own affairs or estate. In his deposition, taken by

the contestants and introduced in evidence, Dr. Medd testified that this note related to physical and not mental disability. In a later record note on October 15, 1978, Dr. Medd stated: "I talked with [the decedent] today and I think she no longer has a receptive aphasia [inability to receive and comprehend information]. She really understands me quite well and occasionally can come out with complete sentences which are totally intelligible and which cause her a lot of joy." [4]

Just prior to execution, the lawyer who prepared the simple, one-page instrument, in the presence of three witnesses, summarized each article and tried to put the practical effect of it in simple layman's language.[5] He particularly explained that the will left the decedent's entire estate to the proponent, that if the proponent did not survive the decedent Patricia alone would take the entire estate to the exclusion of the other children, David and John, and that in the latter event, Patricia was expected to provide for David and John. The decedent responded to each of the lawyer's statements concerning the will with a "yes" or "no" answer or nod. As a result of this procedure and of his observations of the decedent, the lawyer was satisfied

---

[4] In a later affidavit, dated November 21, 1978, apparently executed in connection with the guardianship proceeding in Maine, Dr. Medd again expressed his opinion that the decedent was "by reason of infirmity" incompetent to manage her estate and that "she lacks sufficient capacity to implement responsible decisions concerning her person or property." Dr. Medd explained that his affidavit related to the decedent's condition on the last day of her hospitalization (November 7) and to her physical and not her mental incompetence. As to the guardianship, we know only that temporary and permanent guardians were appointed for the decedent on November 22 and December 18, 1978, respectively, on a petition initiated by her sons, the contestants.

[5] The lawyer had met with the decedent prior to preparing this instrument to discuss its terms. The date of that meeting does not appear in the record, but it could not have been earlier than October 16, 1978, the date the lawyer was first contacted. There is some suggestion (although not entirely clear) that the judge may have disbelieved some or all of the lawyer's testimony as to this first meeting with the decedent in concluding that he could not then "adequately discuss the will provisions with the testatrix." However, disbelief of testimony does not support a finding that the contrary is true. See *Commonwealth* v. *Michaud*, 389 Mass. 491, 498 (1983); *Kunkel* v. *Alger*, 10 Mass. App. Ct. 76, 86 (1980).

that the decedent understood the provisions of the will, that they were what she wanted and that she knew she was making a will.[6]

Dr. Medd was a witness to the will at the request of the lawyer, who first elicited Medd's opinion as to the decedent's testamentary capacity and explained Medd's role as a witness. In his deposition testimony (which the judge completely ignored in his report of material facts), Dr. Medd stated in unequivocal and uncontradicted terms his opinion that the decedent understood the terms of the document and that she was making a will.

We hold that the proponent met his burden of showing by a fair preponderance of the competent evidence that the decedent had testamentary capacity on the day she executed the will.

7. *Undue influence.* It is unnecessary to repeat or elaborate on the complete discussion of the law of undue influence in the leading case of *Neill* v. *Brackett,* 234 Mass. 367, 369-370 (1920). See *Heinrich* v. *Silvernail, ante* at 223. There was competent evidence on each of the factors necessary to prove undue influence. The burden on that issue was, of course, on the contestants. See *Tarricone* v. *Cummings,* 340 Mass. 758, 762 (1960). A significant portion of the evidence on the question was introduced by oral testimony. In this circumstance, "[t]he question is not what finding we ourselves would have made on the same evidence. The case is one in which widely differing inferences could be drawn from the evidence, and it is not one where the drawing of inferences can be separated from the evaluation of the testimony itself. [Citation omitted.] Most of the evidence [on the issue of undue influence] was given orally. The value of the testimony of the witnesses depended in great measure upon their appearance and their manner of testifying on the stand. In such a case we must give full recognition to the advantage possessed by the trial judge, who saw and heard the witnesses." *Goddard* v. *Dupree,* 322 Mass. at 248.

---

[6] The written depositions of the two other witnesses to the will were introduced in evidence. Only one is reproduced in the appendix. That witness identified her signature but could remember nothing about the event.

Here, however, we think that the improperly admitted and considered evidence which we have previously discussed necessarily so infected the judge's assessment of the credibility of the oral testimony that there must be a new trial on the issue of undue influence.[7] See *Turner* v. *Leonard, Inc.,* 17 Mass. App. Ct. 909, 910-911 (1983).

The decree disallowing the will is reversed, and the case is remanded for a new trial on the issue of undue influence only. Because of the nature of the improperly admitted evidence, that trial is to be held before a different judge of the Probate Court.

*So ordered.*

---

[7] We thus do not reach the proponent's arguments that the judge erred in relying upon portions of excluded evidence.