In the Matter of the ESTATE OF Walter OTTO, Deceased.

Loren OTTO, Plaintiff and Appellant,

v.

Carol LASHMAN, Personal Representative of the Estate of Walter Otto, Defendant and Appellee.

Civ. No. 920119.

Supreme Court of North Dakota.

Dec. 22, 1992.

Rauleigh D. Robinson (argued), Bismarck, for plaintiff and appellant; appearance by Loren Otto.

Eaton, Van de Streek & Ward, Minot, for defendant and appellee; argued by Jonathan C. Eaton.

JOHNSON, Justice.

Loren Otto appeals from a summary judgment issued by the County Court of McHenry County which dismissed his challenge to the probate of his father's will. We reverse.

Walter Otto, a long-time resident of McHenry county, died on May 26, 1991, at his home in Granville. At the time of his death, Walter was a widower and had two living children; Loren Otto and Carol Lashman. Walter was diagnosed as terminally ill in May, 1991. Prior to his death, he suffered from cancer in his right lung, congestive heart failure, cancer of the prostate, and end-stage renal failure which required extensive dialysis treatments. Due to his condition, Walter entered a hospice program administered by Trinity Hospital of Minot. As part of the program, Walter received a portion of his care at home from hospital staff and volunteers. Walter also received care from his daughter, Carol, who had moved into Walter's home when he was diagnosed as terminally ill.

Walter's condition deteriorated rapidly through May. Medical records indicate Walter's voice seemed very weak, his heart

was skipping beats, and his pulse was diminished on May 23, 1991. Carol contacted Minot attorney Jonathan C. Eaton in regard to executing a will. On May 25, with Carol and Eaton present, Walter signed a will hand written by Eaton. Carol and Eaton signed as attesting witnesses.[1] The will left Loren 120 acres of land in McHenry county and $5,000 dollars in cash. Carol was appointed personal representative and was bequeathed the residue of Walter's estate which included land, farm equipment, assets from Walter's construction business, cash, and a right of first refusal on the land left to Loren. The value of Carol's bequest was substantially more than that of Loren's. On May 26, 1991, Walter died.

Carol initiated informal probate procedures shortly after Walter's death. Loren objected to the probate of the will alleging, among other things, that Walter's will should be set aside since it was the result of undue influence.[2] Carol then moved for summary judgment.

To oppose the motion, Loren presented Walter's medical records; an affidavit from Michael McIntee, an attorney at law, regarding a visit from Walter about a year prior to his death where Walter discussed possible changes to an existing will; and, his own affidavit regarding his relationship with his father and statements his father made about Carol.

On March 16, 1992, the court granted summary judgment to Carol, as personal representative of Walter's estate, ruling that the signatures and attestation of the witnesses to the will established a presumption of due execution which only clear and convincing evidence could overcome. The court labeled the medical records "as basically hearsay," and dismissed Attorney McIntee's affidavit as "totally irrelevant," as it referred to events that did not relate

to the time Walter executed the will. The court also dismissed Loren's affidavit as "replete with hearsay." Loren appeals asserting the trial court erred in granting summary judgment to Carol.

■ In *Matter of Estate of Stanton,* 472 N.W.2d 741 (N.D.1991), this Court summarized the standards governing the granting of summary judgment. Under Rule 56, N.D.R.Civ.P., a summary judgment should be granted only if it appears that there are no genuine issues of material fact or any conflicting inferences which may be drawn from those facts. *See Production Credit Ass'n of Minot v. Klein,* 385 N.W.2d 485 (N.D.1986). The party moving for a summary judgment has the burden to demonstrate clearly that there is no genuine issue of material fact. *Binstock v. Tschider,* 374 N.W.2d 81 (N.D.1985). In considering a motion for a summary judgment, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence to determine whether summary judgment is appropriate. *Everett Drill. Vent. v. Knutson Flying Serv.,* 338 N.W.2d 662 (N.D. 1983). The court must view the evidence in a light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *See Stokka v. Cass Cty. Elec. Co-op., Inc.,* 373 N.W.2d 911 (N.D.1985). In addition, the court must consider the substantive standard of proof at trial when ruling on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470 (N.D.1991). A key consideration is whether a fact finder could find either that the plaintiff proved his case by the quality and quantity required by the governing law or that he did not. *Matter of Estate of Stanton, supra,* at 743.

1. The attestation clause stated, "[t]he undersigned hereby certifies that Walter Otto signed the foregoing Will on 5–25–91 in the presence of the undersigned and after identifying it as his Last Will."

2. After the will was admitted to probate, Loren filed a "creditor's claim," alleging the will was,

among other things, the product of undue influence. Carol apparently treated the creditor's claim as a will challenge and moved for summary judgment. Loren subsequently served a summons and complaint challenging the probate of the will.

■ Loren contends the trial court erred in granting summary judgment to Carol because the evidence presented to oppose the motion established genuine issues of material fact. We agree and conclude that the trial court placed an unduly heavy burden of proof on Loren.

The trial court in its memorandum opinion granting summary judgment states:

> It is well settled that the proof of the signatures of the attesting witnesses establishes a presumption of due execution of the Will which only clear and convincing testimony can overcome:
>
>> 'Where the signatures of the attesting witnesses are established by unquestioned proof, the recitals of the attestation clause of due execution of the Will are presumed to be true and can only be overcome by clear and convincing testimony.' *In re Bauers Estate*, 79 N.D. 113, 54 N.W.2nd 891, at 894, (1952), cited in *Matter of the Estate of Papineau*, 396 N.W.2nd 735 (N.D. 1986), and followed in *Matter of the Estate of Stanton*, 472 N.W.2nd 741 (N.D.1991).

After finding the attesting signatures of Carol and Eaton established by unquestioned proof, the court concluded "the Will is presumed to be valid and the burden of showing invalidity for clear and convincing testimony is on the contestant." In effect, the trial court ruled that the presumption of due execution arising from proof of the attesting witnesses' signatures also includes a presumption that no undue influence occurred. This presumption can only be overcome by clear and convincing evidence. However, this Court has never ruled that the presumption of due execution[3] includes a presumption of a lack of undue influence. Undue influence is a circumstance arising separate from the execution of a will.

In *Stanton* the contestant of the will argued that the will was not executed in 1974, its indicated date, but was actually executed in 1977, afflicted with undue influence, forgery, and fraud. We held that the claims of invalidity ignored the presumption of due execution, created by the attestation clause of the will. Applying the clear and convincing standard, we found there was insufficient evidence to overcome the presumption the 1974 will was duly executed. Our analysis focused on whether a will existed in 1974. We did not extend the clear and convincing evidentiary standard to the undue influence claims.

In *Papineau* a devisee sought to establish the validity of a will. We held that the devisee established due execution of the will, therefore, "[u]nless overcome by clear and convincing testimony, the recitals in the attestation clause of the 1959 will are presumed to be true and establish that the 1959 will was duly executed in accordance with the requirements of § 56–03–02, N.D.C.C." *Papineau, supra,* at 739. While we noted that the contestant has the burden of sustaining an undue influence challenge to the validity of the will, we did not deal with an undue influence claim.

In *In re Bauers Estate,* 79 N.D. 113, 54 N.W.2d 891 (N.D.1952), the daughter of a testator challenged a will on the grounds the will could not be admitted to probate because the testator had never published, and declared to the witnesses to the instrument, that it was his last will. We held that the attestation clause of a will created a presumption of due execution that could only be overcome by clear and convincing evidence. Undue influence was not an issue.[4]

---

**3.** "Due execution means compliance with the formalities required by the statute in order to make the instrument the will of the test[ator]. The presence of an attestation clause which recites the facts necessary to the validity of a will raises a presumption of due execution." *In re Estate of Flider,* 213 Neb. 153, 328 N.W.2d 197, 199 (1982).

**4.** Recently, in *Matter of Estate of Ostby,* 479 N.W.2d 866 (N.D.1992), we reversed a judgment

that declared a will filed for the testator was not his will. The trial court found the will was signed without testamentary intent and under undue influence. We stated that testamentary intent was presumed upon proof of due execution, with the burden of disproving testamentary intent falling on the contestant. As a result, we concluded the will was the testator's. As for undue influence, we merely stated that the court based its findings on an erroneous view of law—that a presumption of undue influence

The governing standard for undue influence challenges, as with most civil matters, is a preponderance of the evidence. *See In re Burris Estate*, 72 N.W.2d 884, 889 (N.D. 1955). In applying a standard of clear and convincing evidence, the trial court appears to have tainted its evaluation of the evidence.

 "Undue influence" is a legal concept that has, if not sinister, at least untoward connotations. We are dealing with something significantly beyond the ordinary conflicts in determining the beneficiaries of one's estate. Undue influence is established by showing that: (1) the testator was subject to such influence; (2) the opportunity to exercise it existed; (3) the disposition to exercise it existed; and, (4) the results appear to be the effect of such influence. To be undue, the influence must operate at the time the will is made and must dominate and control the making of the will. It must be such as to make the will express the purpose and intent of the person exercising the influence, and not the purpose and intent of the testator. *Okken v. Okken Estate*, 348 N.W.2d 447, 450 (N.D.1984). Undue influence is a question of fact and the contestant of the will bears the burden of proof. *Estate v. Mickelson*, 477 N.W.2d 247 (N.D.1991); N.D.C.C. § 30.1–15–07. Mere suspicion of undue influence is insufficient to require submission of the question to a jury. *Matter of the Estate of Herr*, 460 N.W.2d 699 (N.D. 1990).

The trial court appears to have given the medical records minimal weight. The trial court summarized the value of the medical records by concluding, "[t]hey are basically hearsay and the statement 'mentally became confused at times' does not relate to the time Walter signed the will. This does not raise a factual question in the mind of the court."[5] Under Rule 803(4), N.D.R.Ev., medical records are an exception to the rule prohibiting hearsay.

Hospice patient progress notes indicate Walter's already serious condition deteriorated rapidly immediately prior to the execution of his will. On the 23rd of May, Walter appeared weak and was having a difficult time talking and standing. His pulse was diminished and he was using oxygen continuously. Records from the 24th of May indicate that Walter's condition had not improved. On or around the 24th, the records indicate Carol informed hospice staff that Walter wanted to have a will made up and that she scheduled a lawyer to come to Walter's home. The will was executed on May 25th, and hospice notes indicate that Carol had informed hospice staff that they need not stop by Walter's home that day. The medical records submitted to the trial court also indicate that Walter was prescribed medication that can produce drowsiness, dizziness, and confusion. The trial court focused on a comment that Walter, "became mentally confused at times." The discharge summary is unclear as to the time and nature of Walter's confusion, therefore, it could refer to the time around the execution of the will.

When considered as a whole, and viewed in a light most favorable to Loren, the medical records and background information support inferences that Walter's will was the product of undue influence. Walter's weakened condition and dependency on Carol indicates he may have been subject to the exercise of undue influence. Carol's presence in Walter's home combined with Walter's condition indicates that the opportunity to exercise influence existed. The record indicates that, on the day of the execution of the will, Carol informed hospice workers not to come by the house. This supports an inference that Carol may have exercised her influence. The unequal distribution of property is evidence of a result which supports undue influence.

arises where there is a confidential relationship between devisee and testator.

5. The trial court, at the close of the summary judgment hearing, refused to take the medical records into evidence on the grounds that the records were not certified as required by Rule

56(e), N.D.R.Civ.P. The court, however, accepted the certified records provided by Loren's counsel after the hearing. The basis for labeling the records "basically hearsay" is unclear since the issue was not raised at the hearing.

Loren's affidavit does contain significant hearsay. However, the trial court may have overlooked admissible portions of the affidavit where Loren states he maintained a cordial relationship with his father, and he was unaware of his father's condition in late May since Carol failed to contact him.

Giving Loren the benefit of all favorable inferences to be drawn from the evidence, we are not satisfied there are no genuine issues of material fact. The judgment of the trial court granting summary judgment is reversed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.