### In the Matter of the ESTATE OF Martha WAGNER, Deceased.

**Donley R. BERGQUIST, Beverly Bergquist, and William Chausee, the Personal Representative of the Estate of Martha Wagner, Deceased, Respondents and Appellants,**

v.

**Vicky KELLER, Petitioner and Appellee.**

### Civil No. 950424.

Supreme Court of North Dakota.

June 27, 1996.

---

William F. Lindell (argued), Washburn, for respondents and appellants Donley R. Bergquist and Beverly Bergquist.

LaRoy Baird III, Bismarck, for respondent and appellant William Chaussee.

Chapman and Chapman, Bismarck, for petitioner and appellee; argued by Charles L. Chapman.

MESCHKE, Justice.

Donley R. Bergquist and personal representative William Chaussee appeal from a judgment declaring a codicil invalid because the testatrix, Martha Wagner, lacked testamentary capacity at the time she signed the codicil. We affirm.

On August 5, 1991, Martha executed a will devising her real and personal property. In the bequest affected by this appeal, Martha devised all four quarters of her land to her niece, Vicky Keller. She also nominated Vicky's husband, Dennis Keller, as personal representative of her estate.

On December 15, 1994, Martha entered the Community Memorial Hospital in Turtle Lake, where she remained until her death in January 1995. Her doctor, Stanley D. Reiswig, diagnosed a variety of medical problems, including pneumonia, jaundice, and cancer. Martha declined any aggressive treatment for the cancer, and her physical condition steadily deteriorated.

On December 19, Martha met with attorney John Romanick in her hospital room, and she asked him to prepare a codicil to her 1991 will. Mainly, Martha wanted to change the portion of her will giving Vicky all four quarters of land. Instead, Martha wanted to give two quarters to Vicky, and the other two quarters to her tenant, Donley R. Bergquist.

Romanick prepared the codicil as instructed and returned to the hospital on December 21. However, Martha refused to sign the codicil because of a blank date in the first paragraph:

> I, MARTHA WAGNER of the post office address of Box 95, Mercer, ND 58559, County of McLean, and State of North Dakota, having made my LAST WILL AND TESTAMENT dated August ____, 1991, do hereby declare this to be a CODICIL to my said LAST WILL AND TESTAMENT.

Although Romanick explained that the codicil would be valid without the specific date, Martha still refused to sign. Romanick left the codicil in Martha's purse.

Although Vicky and Dennis knew that Romanick had prepared a codicil for Martha, they were unaware of its contents. As Martha's condition steadily deteriorated, they feared that she would soon be unable to sign the codicil. At 1:30 p.m. on January 6, Martha received her daily dose of Darvocet, a pain suppressant that can cause confusion and drowsiness. At about 2:35 p.m., Vicky asked Martha if she wanted to sign the codicil. Martha did not respond, and fell asleep. Vicky left the room to see if witnesses and a notary were available in the hospital. When she returned, she again asked Martha if she wanted to sign. Martha responded, "What do you mean?" Vicky explained there was a "will" in Martha's purse, and that she would get witnesses and a notary if Martha wanted to sign it. Martha asked what a "notary" was, and Vicky tried to explain. Martha fell asleep again. Around 3:10 p.m., Vicky asked Martha a third time if she wanted to sign the codicil. Martha asked, "Do you want me to sign?" Vicky responded, "That's your decision," and Martha indicated she would sign.

After Martha said she would sign the codicil, Dennis went to get the witnesses and notary. When he returned, he opened the codicil to the signature page and showed Martha where to sign. While signing, Martha said, "My signature is really shaky but I'll try to sign it." As she signed, one of the witnesses had to reposition her hand on the signature line. Two hospital nurses signed as witnesses, and Russell Stadler, a local banker, notarized the signatures.

Martha died on January 14, 1995. In February, the trial court admitted the 1991 will and the codicil to informal probate, and appointed Dennis as personal representative of Martha's estate. In March, Vicky petitioned the court to remove the codicil from informal probate, asserting Martha lacked testamentary capacity at the time she signed it. Bergquist resisted Vicky's petition.

Recognizing a potential conflict of interest, Dennis asked the court to appoint a special administrator to defend the codicil. The court appointed William Chaussee. When Bergquist asked the court to remove Dennis as personal representative, Chaussee was substituted as personal representative.

After a hearing, the trial court declared the codicil invalid because it found Martha

lacked testamentary capacity at the time she signed the codicil, and declared the 1991 will to be the only effective testamentary instrument by Martha Wagner. Bergquist and Chaussee appeal.

■ A determination of testamentary capacity, or the lack of it, is a question of fact. *Matter of Estate of Mickelson*, 477 N.W.2d 247, 251 (N.D.1991). Under NDRCivP 52(a), we will set aside a trial court's factual findings only when they are clearly erroneous. *Matter of Estate of Zimbleman*, 539 N.W.2d 67, 72 (N.D.1995); *Matter of Estate of Ostby*, 479 N.W.2d 866, 869 (N.D.1992). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made." *Mahoney v. Mahoney*, 538 N.W.2d 189, 192 (N.D.1995). We are not convinced a mistake was made here.

■ Bergquist and Chaussee (together, "Bergquist") assert Vicky had to prove Martha's testamentary incapacity by clear and convincing evidence before the trial court could properly invalidate the codicil, and that there is not "even a remote reference to the evidentiary requirement of clear and convincing evidence" in the trial court's decision. Thus, Bergquist asserts, the trial court's finding is clearly erroneous because it was "induced by an erroneous view of the applicable law." We disagree with Bergquist's assertion that clear and convincing evidence is necessary to prove testamentary incapacity.

■ Bergquist dodges the distinction between the concepts of "due execution" and "testamentary capacity." To be "duly executed," a will must comply with the statutory requirements for execution. *See* NDCC 30.1–08–02 (stating requirements for "Execution" of will); *see also Matter of Estate of Otto*, 494 N.W.2d 169, 172 n. 3 (N.D.1992). "Testamentary capacity," on the other hand, is the required mental condition of the testator at the time of execution. While it is true that recitals of due execution in a will's attestation clause are presumed to be true and can only be overcome by clear and convincing

evidence, we have not extended this higher standard of proof to testamentary capacity.

For example, in *Matter of Estate of Stanton*, 472 N.W.2d 741, 743 (N.D.1991), a will contestant argued that "the will offered to probate was not duly executed in 1974, its purported date, but was actually executed after" the testator had a stroke in 1977. In addressing this argument, we clearly limited the higher burden of proof to the due execution issue: "Recitals in an attestation clause of a will are presumed to be true and *can be used to establish due execution* unless the presumption of truth is overcome by clear and convincing evidence." *Id.* at 744 (emphasis added). Likewise, while addressing due execution in *Matter of Estate of Papineau*, 396 N.W.2d 735, 738 (N.D.1986), we quoted *In re Baur's Estate*, 79 N.D. 113, 119, 54 N.W.2d 891, 894 (1952): "[W]here the signatures of the attesting witnesses are established by unquestioned proof, the recitals of the attestation clause *of due execution* of the will are presumed to be true and can only be overcome by clear and convincing testimony." (emphasis added). Thus, our prior opinions clearly confine the clear-and-convincing-evidence standard to proof of due execution.

This conclusion is braced by our analysis in *Otto*, 494 N.W.2d at 172, where we reversed a trial court's reliance on the presumption of due execution to require a will contestant to prove undue influence by clear and convincing evidence. We pointed out that *Stanton*, *Papineau*, and *Baur's Estate* were due execution cases, and that we had "not extend[ed] the clear and convincing evidentiary standard to the undue influence claims." *Id.* We explained that "[u]ndue influence is a circumstance arising separate from the execution of a will," *id.*, and held that the "governing standard for undue influence challenges, as with most civil matters, is a preponderance of the evidence." *Id.* at 173. So, too, the governing standard for testamentary capacity is a preponderance of the evidence.

■ Although testamentary capacity is examined at the time of execution, they are distinct concepts. Just as a testator can "duly execute" a will (that is, satisfy NDCC 30.1–08–02) while under an undue influence, a testator can "duly execute" a will while

lacking testamentary capacity. In addition, even though there is an initial presumption of testamentary capacity, *Mickelson,* 477 N.W.2d at 251, a will contestant can overcome this presumption by "proving that the nonexistence of the presumed fact is more probable than its existence." NDREv 301(a). We have not been given a reason for requiring a higher standard to prove testamentary incapacity than what is required to prove undue influence. Therefore, like undue influence, we hold that a will contestant must prove testamentary incapacity by a preponderance of the evidence, the normal standard of proof in a civil case.[1]

■ Bergquist argues that the trial court's evaluation of the evidence in this case was clearly erroneous. We disagree.

■ Only a testator "of sound mind" can make a codicil. NDCC 30.1–08–01. This Court has often quoted a passage from *Stormon v. Weiss,* 65 N.W.2d 475, 504–05 (N.D. 1954), to explain testamentary capacity:

> Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them. He must have sufficient mind and memory to understand all of these facts; . . . . He must also be able to appreciate the relations of these factors to one another, and to recollect the decision which he has formed.

*See Stanton,* 472 N.W.2d at 746; *Matter of Estate of Herr,* 460 N.W.2d 699, 703 (N.D. 1990); *Matter of Estate of Thomas,* 290 N.W.2d 223, 225 (N.D.1980); *see also* 1 BOWE-PARKER: PAGE ON WILLS § 12.21 (1960). Testamentary capacity is presumed, and the contestant to a codicil has the burden to prove lack of testamentary capacity. NDCC 30.1–15–07; *see Mickelson,* 477 N.W.2d at 251; *Stanton,* 472 N.W.2d at 746. For testamentary capacity, the trial court must assess the condition of the testator's mind at the "very time" the testator signed the codicil. *Stanton,* 472 N.W.2d at 746; *Thomas,* 290 N.W.2d at 225; *Stormon,* 65 N.W.2d at 483. Therefore, Vicky had the burden to prove by a preponderance of the evidence that Martha lacked testamentary capacity on January 6.

Substantial competent evidence overcame the presumption of testamentary capacity in this case, and supported the trial court's finding that Martha lacked testamentary capacity when she signed the codicil. Dr. Reiswig testified that Martha's jaundice was a symptom of bile building up in her body, and that the buildup of toxic bile in the brain causes dementia. According to Dr. Reiswig, the severity of Martha's jaundice was "directly related" to the severity of her dementia. After explaining that a bile measurement up to one is normal, with ten being a "critical level," Dr. Reiswig testified Martha had a bile level of three when she was admitted to the hospital, and that it steadily increased until her death. Although Martha's bile level was not measured again, Dr. Reiswig believed, based on the severity of her jaundice, that Martha's bile level would have been between fifteen and twenty when she died.

Beginning on December 13, Martha was given a daily dosage of Darvocet, a pain suppressant causing confusion and drowsiness. On January 6, she received a dose less

1. North Dakota is not alone in applying a preponderance-of-the-evidence standard. *See Matter of Estate of Thorpe,* 152 Ariz. 341, 732 P.2d 571, 573 (Ct.App.1986); *Matter of Estate of Davidson,* 310 Ark. 639, 839 S.W.2d 214, 216 (1992); *In re Piercen's Estate,* 118 Colo. 264, 195 P.2d 725, 727 (1948); *In re Kiggins' Estate,* 67 So.2d 915, 918 (Fla.1953); *Estate of Turf,* 435 A.2d 1087, 1089 (Me.1981); *Palmer v. Palmer,* 23 Mass.App.Ct. 245, 500 N.E.2d 1354, 1357 (1986); *Clardy v. National Bank of Commerce,* 555 So.2d 64, 66 (Miss.1989); *In re Estate of Camin,* 212 Neb. 490, 323 N.W.2d 827, 830 (1982); *McCollum v. Banks,* 213 S.C. 476, 50 S.E.2d 199, 202 (1948); *Matter of Estate of Kesler,* 702 P.2d 86, 88 (Utah 1985); *Gibbs v. Gibbs,* 239 Va. 197, 387 S.E.2d 499, 500 (1990); *Matter of Estate of Obra,* 749 P.2d 272, 277 (Wyo.1988); *see generally* 3 BOWE-PARKER· PAGE ON WILLS § 29.35 (1961 & Supp.1996); 79 Am.Jur.2d *Wills* § 151 (1975); 94 C.J.S. *Wills* § 58 (1956 & Supp.1995). *But see Succession of Lyons,* 452 So.2d 1161, 1165–66 (La.1984) (requiring proof of incapacity by clear and convincing evidence); *In re Estate of Angier,* 381 Pa.Super. 114, 552 A.2d 1121, 1123 (1989); *Matter of Estate of Sorenson,* 87 Wis.2d 339, 274 N.W.2d 694, 696 (1979) (same).

than two hours before she signed the codicil. Dr. Reiswig testified that in "a patient that is weak and ill and elderly," the confusion and drowsiness caused by Darvocet "may be exaggerated quite significantly." Moreover, he testified that Martha's daily doses of Darvocet would have a "cumulative effect to some degree" because, like the bile, her body was unable to properly discharge the medication.

When asked for his opinion on Martha's mental capacity when she signed the codicil on January 6, Dr. Reiswig testified that "she was very confused and not comprehending some of the things that may have been done or understanding some of the significance of some of the far-reaching effects of what she was doing." The trial court found: "The testimony of Dr. Reiswig was unequivocal. He had treated Martha for several years and saw her on a daily basis during her hospitalization. His opinion was supported by hospital records and was not contradicted by any witness who saw Martha on January 6, 1995."

Other evidence about her capacity, within a reasonable time before and after she signed the codicil, also buttressed the conclusion that Martha was very confused when she signed the codicil on January 6. Near 2:00 p.m., Martha believed she was in Mercer, rather than Turtle Lake; Vicky had to explain the function of a notary to Martha, although she had previously known; and Martha mistook notary Stadler for attorney Romanick.

Marge Schumann, a registered nurse who was also Martha's friend and neighbor, visited Martha about three hours after she signed the codicil. Martha again insisted she was in Mercer, despite being corrected by Schumann. Of particular relevance, Martha also complained to Schumann that she had not made arrangements to dispose of her house; yet, as the trial court found, "Martha's codicil specifically bequested her house to Beverly Bergquist and Emma Hinsz." Based on her medical experience as a registered nurse and her personal contact with Martha, Schumann testified she did not believe Martha would have been "competent to make any decisions for herself" at the time she signed the codicil.

 Bergquist presents various arguments that the trial court erred in relying on the testimony of Dr. Reiswig and Schumann. However, the trial court was in the best position to weigh the evidence and to judge the credibility of the witnesses. *Mickelson,* 477 N.W.2d at 251. Moreover, even if there is evidence that might support a finding of testamentary capacity, a "finding of fact that comports with one of two permissible views of the evidence is not clearly erroneous." *Matter of Estate of Aune,* 478 N.W.2d 561, 564 (N.D.1991). We are not convinced the trial court made a mistake in evaluating the evidence.

We have considered Bergquist's remaining arguments, and find them to be without merit. Therefore, we affirm the judgment invalidating the codicil.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.